[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-12052
_____

D.C. Docket No. 6:10-cr-00193-GAP-DAB-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JASON DENNIS MCGUIRE,

Defendant - Appellant.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 30, 2013)

Before O'CONNOR,[*] Associate Justice Retired, and MARCUS and PRYOR,
Circuit Judges.

O'CONNOR, Supreme Court Justice (Ret.):

_____

[*] Honorable Sandra Day O'Connor, Associate Justice (Retired) of the United States Supreme
Court, sitting by designation.

Appellant Jason McGuire fired a single shot from a handgun in the general direction of an airborne police helicopter.  Believing he meant to hit the helicopter, a jury convicted McGuire of attempting to "set[] fire to, damage[], destroy[], disable[], or wreck[] an[] aircraft in the special aircraft jurisdiction of the United States."  18 U.S.C. §32(a)(1).  The judge determined that this was a crime of violence for purposes of 18 U.S.C. §924(c)(1)(A), which imposes a mandatory consecutive sentence on anyone who uses or possesses a firearm in connection with such a crime.  McGuire challenges both the jury's verdict and the judge's determination.  We affirm.

## I.

Because McGuire challenges the sufficiency of the evidence supporting his conviction, the facts are in dispute.  Roughly speaking, however, they are as follows:

Inebriated and distraught because of losing his girlfriend and his job, McGuire took his father's loaded .38-caliber revolver from an unlocked safe and out into the driveway of his home.  He called several friends on his cell phone, attempting to vent his distress, but could not find a ready ear.  He was contemplating suicide, he says, but he could not bring himself to it.  Instead, he fired off several rounds: one into a tree near the driveway, and several down the

empty street.  Neighbors called the police.  McGuire, meanwhile, went back inside. See Dkt. No. 152 at 19-24.

When he came out again, the police had responded.  By then, there were officers on the ground and a police helicopter in the air, shining its spotlight in his direction.  McGuire raised his arm and fired one round into the sky.  See, e.g. Dkt. No. 150 at 120-123.  One witness testified that he saw McGuire fire directly into the spotlight and at the helicopter, see Dkt. No. 151 at 115-117; another said that he raised his arm to an 80-degree angle and fired, see Dkt. No. 150 at 124-125; and yet others testified that he had surely fired into the air and in the general direction of the helicopter, but could not say whether he had fired at the helicopter or not, see, e.g., Dkt. No. 150 at 134-135; Dkt. No. 150 at 189.

McGuire's story at trial was that, having abandoned his thoughts of suicide, he merely came back outside to empty the gun of its final bullet, as he had intended when firing into the empty night before.  He had fired the bullet off "randomly," without meaning to hit the helicopter or even knowing it was there.  See Dkt. No. 152 at 25.  That was not the same story he told when he was arrested, however: Then he had said that he had been inside sleeping, had heard nothing, and had never fired a gun at all.  See Dkt. No. 151 at 119.  Other witnesses had also undermined the suggestion that McGuire could somehow have failed to appreciate

3

the helicopter's presence at the time that he fired, attesting to the loud noise and vibrant spotlight it produced.  See, e.g., Dkt. No. 150 at 101.

In closing, McGuire told the jury that "there [wa]s just one issue and that [wa]s whether [he had] intentionally, willfully and knowingly shot at the sheriff's office helicopter."  Dkt. No. 152 at 108-109.  Evidently believing that he had, the jury found McGuire guilty on Count One:  attempting to wreck, damage, or destroy an aircraft in the special aircraft jurisdiction of the United States.  See 18 U.S.C. §32(a)(1).  It also found that McGuire had used or possessed a firearm in connection with that crime, which the judge determined to be a crime of violence. See Dkt. No. 153 at 81 (instructing jury that the first element of the firearms offense was committing the crime charged in Count One).  This appeal followed.

## II.

We review the sufficiency of the evidence supporting the jury's verdict de novo, but in so doing, we must draw all reasonable inferences in favor of the verdict.  United States v. Mercer, 541 F.3d 1070, 1074 (11th Cir. 2008).  If "a reasonable jury could have found the defendant guilty beyond a reasonable doubt," then we cannot overturn the jury's determination.  Id.

This standard, which entrusts the resolution of disputed factual issues to the jury, resolves McGuire's sufficiency challenge.  McGuire admits, as he must, that "one witness, Deputy Nicholas Paul, testified that he witnessed a stationary Jason

4

McGuire shoot a pistol skyward 'right toward the spotlight' where a helicopter orbited." Appellant's Br. 25. The jury was entitled to believe Deputy Paul, and conflicting testimony about whether McGuire aimed at the helicopter or the sky was for the jury to resolve.

McGuire counters that a reasonable jury could not have accepted Deputy Paul's testimony because the testimony indicated that the helicopter was circling and McGuire was standing still "without moving to follow the path of the helicopter" or otherwise tracking it when he fired. Appellant's Br. 26. He views this as a physical impossibility that makes Paul's testimony that McGuire fired at the helicopter "so inherently incredible, so contrary to the teachings of basic human experience, so completely at odds with ordinary common sense, that no reasonable person would believe it beyond a reasonable doubt." United States v. Chancey, 715 F.2d 543, 546 (11th Cir. 1983). We cannot agree. To begin with, we are not convinced that any real inconsistency exists between these two elements of the testimony—at least to the degree that would make Paul's testimony "completely at odds with ordinary common sense." Any person who has ever hunted anything—even electronic ducks—knows that a person can fire a round quickly in the direction of a moving object without tracking it first; they might well miss, but they would still mean to hit the target.

5

More importantly, such evidentiary points are classic jury arguments about McGuire's likely intentions, not a reason to disregard the jury's determination of his intent.  Indeed, at the heart of the case is a contested inference; McGuire offers reason to infer from his body position that he meant only to empty his gun of its final bullet; the prosecution offers reasons to infer from his firing into the sky where a police helicopter circled that he meant to hit the police helicopter.  We must draw every inference in favor of the jury's verdict, however, and some evidence clearly supports the prosecution's theory.  Thus, we cannot accept McGuire's sufficiency challenge.

## III.

McGuire also maintains that, even if he did attempt to damage, destroy, disable, or wreck an aircraft, that is not a crime of violence within the ambit of 18 U.S.C. §924(c).  This is a question of law we review de novo, and that we must answer "categorically"—that is, by reference to the elements of the offense, and not the actual facts of McGuire's conduct.  United States v. Llanos-Agostadero, 486 F.3d 1194, 1196 (11th  Cir. 2007).  We employ this categorical approach because of the statute's terms:  It asks whether McGuire committed "an offense" that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or that "by its nature, involves a substantial risk that physical force against the person or property of another may be

6

used." 18 U.S.C. §924(c)(3)(A)-(B) (emphasis added). Thus, even though firing a gun at a flying helicopter is unmistakably violent, we must ask whether the crime, in general, plausibly covers any non-violent conduct. See Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007) (requiring "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the standard). Only if the plausible applications of the statute of conviction all require the use or threatened use of force can McGuire be held guilty of a crime of violence.

We begin this analysis by noting a special fact about McGuire's conviction—namely, that it requires attempting to damage or disable an aircraft in the "special aircraft jurisdiction of the United States." 18 U.S.C. §32(a)(1). This is defined as an "aircraft in flight," 49 U.S.C. §46501(2), which is further defined as encompassing the time "from the moment all external doors are closed following boarding through the moment when one external door is opened to allow passengers to leave." Id. §46501(1)(A). In other words, McGuire was necessarily convicted of attempting to damage or disable an aircraft that was either flying or else ready to take off or arriving at a destination with people on board.

In that context, we have no trouble concluding that most of the separately stated versions of the offense can be readily recognized as crimes of violence. Attempting to "set[] fire to, damage[], destroy[] . . . or wreck[]" an aircraft with

7

people on board is unmistakably violent.  At a minimum, each of these actions has "as an element, the use, attempted use, or threatened use of physical force against the . . . property of another."  18 U.S.C. §924(c)(3)(A).  Because each necessarily involves the attempted or threatened destruction of very sensitive property—and quite probably lives as well—they are crimes of violence, and properly accounted predicates for the firearms enhancement under §924(c).

Understandably, McGuire focuses on the sole remaining version of the offense—"disabl[ing] an aircraft"—and argues that it does not necessarily involve the use of force or a serious risk that force will be involved.  To that end, he cites such possibilities as "deflating the tires, disabling the ignition, or disengaging the fuel lines" while the airplane is on the ground, or "disconnecting the onboard circuitry, disabling the radio transponder . . . and interfering with the aircraft's radio equipment" while the plane is in the air.  Appellant's Br. 21-22.  He correctly cites to Leocal v. Ashcroft, 543 U.S. 1 (2004), in which the Supreme Court held that drunk driving is not a crime of violence, for the proposition that we must determine whether the crime involves the risk that force will be used, not the risk that an injury might result.  Id. at 10-11 & n.7.  Accordingly, he says, it is not enough that attempting to disable an aircraft risks danger to the people on board; it must involve the risk that an act of force will be done against them.

8

This argument misses twice.  First, we think that attempting to disable an aircraft <u>while people are on board</u> is itself an act of force in the meaningful sense. It involves an "active crime" done "intentionally" against the property of another, with extreme and manifest indifference to the owner of that property and the wellbeing of the passengers.  <u>See</u> <u>Leocal</u>, 543 U.S. at 7, 9.  Unlike drunk driving, where any harm to others or their property is an <u>accident</u>, <u>see</u> <u>Leocal</u>, 543 U.S. at 11-12, a serious interference with the freedom, safety and security of others is a natural and probable consequence of sabotaging an airplane with people aboard.  It makes little difference that the physical act, in isolation from the crime, can be done with a minimum of force; we would not say that laying spikes across a roadway is a non-violent crime because laying something upon the ground is not a forceful act.  It still involves an intentional act against another's property that is calculated to cause damage and that is exacerbated by indifference to others' wellbeing.  Likewise, the fact that deflating an airplane's tire or rewiring its onboard systems are minimally forceful acts does not mean that such acts of sabotage against a loaded plane are not crimes that involve the use of force against that plane or its passengers.

Second, attempting to disable a plane in flight or during takeoff or landing is a crime of violence for the same reason that the Supreme Court gave in <u>Leocal</u> regarding burglary: it, "by its nature, involves a substantial risk that the burglar

9

will use force against a victim in completing the crime." Leocal, 543 U.S. at 10.

The Court has explained that the risk of violence from burglary comes

> not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate. That is, the risk arises not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress.

James v. United States, 550 U.S. 192, 203 (2007). The same is true of attempting

to disable an aircraft that is full of people and about to take off, landing, or already

in flight. If, at such a time, a person attempts to disable the craft, there is, at a

minimum, a serious risk of "a face-to-face confrontation between the [perpetrator]

and a third party—whether an occupant, a police officer," an air marshal, federal

safety personnel, the crew, or a bystander. This is especially true given the

heightened level of security that is now entailed by air travel. Accordingly,

disabling a plane in the special aircraft jurisdiction of the United States at least

involves a serious risk that force will be used in its completion.

## IV.

Accordingly, we determine that there was sufficient evidence to convict

McGuire of attempting to damage or disable an aircraft in flight under 18 U.S.C.

§32(a)(1), and that this is categorically a crime of violence. His conviction and

sentence are **AFFIRMED.**

10