[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10172
Non-Argument Calendar
_____

D.C. Docket Nos. 1:16-cv-02392-TWT; 1:10-cr-00305-TWT-RGV-1

IRMA OVALLES,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 30, 2017)

Before TJOFLAT, HULL and WILLIAM PRYOR, Circuit Judges.

HULL, Circuit Judge:

Irma Ovalles, a federal prisoner, appeals the district court's denial of her 28 U.S.C. § 2255 motion to vacate her conviction and sentence for using and carrying a firearm during and in relation to a crime of violence (Count Five), namely, attempted carjacking (Count Four), on the grounds that the "risk-of-force" clause in 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague under Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551 (2015).  The district court held that the "risk-of-force" clause in § 924(c)(3)(B) was not void for vagueness and that, therefore, Ovalles could not make a claim for relief under Johnson.  Additionally, the government argues that Ovalles's attempted-carjacking conviction in Count Four categorically qualifies as a crime of violence under the "use-of-force" clause in § 924(c)(3)(A).

After review, we conclude that Johnson does not apply to or invalidate § 924(c)(3)(B) and that Ovalles's attempted-carjacking conviction in Count Four qualifies as a crime of violence under § 924(c)(3)(B).  Accordingly, we affirm the denial of Ovalles's § 2255 motion on that basis.  As an independent and alternative ground for affirmance of the denial of Ovalles's § 2255 motion, we hold, as the government argues, that Ovalles's attempted-carjacking offense qualifies as a crime of violence under the "use-of-force" clause in § 924(c)(3)(A).

## I.  BACKGROUND FACTS

### A.    Charges and Plea Agreement

In 2010, Ovalles was charged by information with Hobbs Act robbery, in violation of 18 U.S.C. § 1915 and 2 (Count One), three counts of carjacking, in violation of 18 U.S.C. § 2119 and 2 (Counts Two, Three and Six), attempted carjacking, in violation of 18 U.S.C. § 2119 and 2 (Count Four), and using and carrying a firearm during the attempted carjacking in Count Four, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 2 (Count Five).

Relevant to this appeal, Count Four charged that Ovalles and six other individuals "aided and abetted by each other, with the intent to cause death and serious bodily harm, did attempt to take a motor vehicle . . ., that is, a Chevrolet Venture, from the person or presence of another, by force, violence and intimidation." Count Five charged that Ovalles and the other six individuals "aided and abetted by each other, did use and carry a firearm during and in relation to a crime of violence, that is, the carjacking as alleged in Count Four herein, an offense for which the defendants may be prosecuted in a court of the United States."

Ovalles entered into a written plea agreement with the government and agreed to plead guilty to all six counts in the information.[1]

## B.    Guilty Plea

---

[1]The parties dispute whether Ovalles's appeal of the denial of her § 2255 motion is barred by the limited appeal waiver in her plea agreement. Because Ovalles's appeal lacks merit in any event, we need not reach the appeal waiver issue.

3

At her plea hearing, Ovalles consented to proceed before a magistrate judge. Under oath, Ovalles stated that she was 20 years old, had reached the ninth grade in school, and could read, write, and understand English. Ovalles further testified that she had never been diagnosed with a mental or emotional illness or treated for alcoholism or drug addiction, and was not under the influence of any drugs, medications or alcohol.

The magistrate judge then summarized the plea agreement and potential sentence. Ovalles stated that no one had threatened her to plead guilty and that she was pleading guilty because she was, in fact, guilty. The government then discussed the elements of each offense in the information, and Ovalles stated that she understood what the government would be required to prove at trial.

## C.    Factual Proffer

The government provided a factual basis for Ovalles's guilty plea at the plea hearing, noting that Ovalles and several others were involved with a series of crimes, including the charged robbery and four separate carjackings, between December 12, 2008 and December 14, 2008. On December 12, 2008, Ovalles and several other individuals, one of whom the victim said had a firearm, committed a robbery at a grocery store, using baseball bats and taking cellular phones, prepaid

phone cards, and Mexican blankets.[2]  Victims of the grocery-store robbery

identified Ovalles as one of the robbers.

The next day the carjackings began.  On December 13, 2008, Ovalles and

her accomplices stole a Dodge Ram pickup truck by striking the truck's owner and

taking his keys.

The day after the carjacking of the truck, on December 14, 2008, Ovalles

and her accomplices stole another vehicle, a Toyota 4-Runner, by demanding the

driver's keys and striking him in the head with a pistol.  Later that day, Ovalles and

her accomplices attempted to steal another car, a Chevrolet Venture, by demanding

the driver's keys and striking the driver's juvenile daughter in the mouth with a

baseball bat.  Ultimately, they did not take the Chevrolet, however, because they

fled after being confronted by a man with a gun.  In attempting to steal the

Chevrolet, one of Ovalles's accomplices fired an AK-47 rifle at the victims.

Finally, Ovalles and her codefendants stole another truck, a Ford F-150, by

demanding the vehicle at gunpoint.

After the government delivered the factual proffer, Ovalles agreed that she

had committed the acts as the government described them.  Ovalles stated that she

was satisfied with her attorney's representation.  Ovalles pled guilty to the charges

---

[2]One of Ovalles's accomplices, Gloria Galvan, was charged in a separate information
with the same offenses and pled guilty at the same time as Ovalles.

in the information, noting that her pleas were voluntary and of her own free will and that she was in fact guilty as charged.

The magistrate judge subsequently entered a report (R&R) recommending that Ovalles's guilty plea be accepted and that she be adjudicated guilty. Without objection, the district court adopted the R&R and accepted Ovalles's guilty plea.

## D.    Presentence Investigation Report

The probation officer prepared a presentence investigation report ("PSI"), to which the government and defendant Ovalles did not object. According to the PSI, Ovalles was a member of a gang called SUR-13 and the former girlfriend of the leader of SUR-13, Pedro Barrera-Perez. Between December 12 and 14, 2008, Ovalles and several others members of SUR-13 went on a violent crime spree that included both charged and uncharged conduct and involved a convenience store robbery, numerous stolen vehicles and armed robberies, injuries to some of the victims, and two high-speed police chases.

The PSI stated as to Counts Four (attempted carjacking of the Chevy) and Five (using and carrying a firearm during that attempted carjacking), which are relevant to this appeal, that at 9:30 p.m. on December 14, 2008, Ovalles and six other gang members stopped a Chevy Venture in an apartment complex by displaying firearms. The robbers ordered the Chevy's driver and his sixteen-year-old daughter out of the vehicle, and then one of the robbers hit the daughter in the

6

mouth with a baseball bat. The robbers took the victims' money and cell phones at gunpoint and demanded the keys to the Chevy. After handing over the keys, the victims managed to escape. As they ran from the parking lot, one of the robbers fired several rounds from an AK-47 rifle in their direction. When someone fired back at the robbers, they fled the area in a pick-up truck, leaving the victim's Chevy behind.

At approximately 10:30 p.m. on December 14, 2008, Ovalles and the other gang members robbed another man and his family at gunpoint. The robbers wore bandanas to cover their faces. Two of the robbers took the victims' Ford truck, and Ovalles and the other four robbers left the scene in a previously stolen Dodge truck. After leaving the scene, the robbers abandoned the Dodge truck, and all seven robbers got into the Ford truck. Because the Ford truck was equipped with OnStar GPS tracking, law enforcement was able to locate the stolen truck. When officers attempted to stop the truck, a high speed chase ensued. The robber driving the stolen truck lost control of the vehicle, causing it to flip over a guardrail and crash into some trees. Five robbers, including Ovalles, were flown by helicopters to the hospital. One robber died at the scene of the crash.

With respect to Counts One through Four and Six, the PSI determined that Ovalles had a total offense level of 31 and a criminal history category of I, which resulted in an advisory guidelines range of 108 to 135 months' imprisonment. As

to Count Five, the § 924(c) firearm offense, the PSI determined that Ovalles's advisory guidelines sentence was the statutory minimum term of ten years' imprisonment, to be served consecutive to any other counts.

### E.    Sentencing Hearing

At her 2011 sentencing, Ovalles did not raise any objections to the PSI's facts or guidelines calculations. The district court determined that Ovalles's advisory guidelines range was 108 to 135 months, plus a mandatory consecutive 120-month term for the § 924(c) firearm offense in Count Five. Ovalles's attorney explained to the district court that the crime spree involved multiple robberies with firearms, but that the government had decided to charge only one § 924(c) firearm offense to avoid Ovalles receiving an extremely long sentence. The parties sought a sentence at the low end of the advisory guidelines range. The district court imposed a 108-month sentence (the low end) on Counts One through Four and Six, to be served concurrently, and a 120-month sentence on Count Five, to be served consecutive to her other sentences, for a total sentence of 228 months. Ovalles did not object to her sentences and did not file a direct appeal of her convictions or sentences.

### F.    Section 2255 Motion

In June 2016, Ovalles filed a pro se § 2255 motion to vacate her sentence.[3]

After the district court appointed counsel, Ovalles filed an amended § 2255 motion

that argued that her § 924(c) conviction and 120-month sentence on Count Five

were unconstitutional in light of Johnson v. United States, 576 U.S. ___, 135 S. Ct.

2551 (2015).  Ovalles contended that she was "no longer guilty of violating"

§ 924(c) because her predicate offense of attempted carjacking in Count Four "no

longer qualifies as a crime of violence under § 924(c)(3)(B)."  Ovalles maintained

that § 924(c)(3)(B)'s risk-of-force clause is "nearly identical to" the residual clause

of the Armed Career Criminal Act ("ACCA") struck down in Johnson as

unconstitutionally vague, and thus § 924(c)(3)(B) "is now extinct."

Ovalles further argued that her attempted-carjacking offense in Count Four

did not qualify as a crime of violence under § 924(c)(3)(A)'s elements clause

because it was an inchoate offense that required only a "substantial step," not the

use of force.  Because her attempted-carjacking offense in Count Four did not

qualify as a crime of violence under either clause of § 924(c)(3), Ovalles argued,

her information failed to state a § 924(c) offense in Count Five and she was

innocent of violating § 924(c).

The government responded, inter alia, that Ovalles's Johnson claim failed on

the merits because: (1) Johnson did not apply to § 924(c)(3)(B)'s risk-of-force

---

[3]This is Ovalles's first § 2255 motion.

clause; (2) § 924(c)(3)(B) was not unconstitutionally vague; and (3) in any event, attempted carjacking qualifies as a crime of violence under § 924(c)(3)(A)'s elements clause because it has as an element the "attempted use" of force.

The district court denied Ovalles's § 2255 motion. The district court noted that Ovalles was not sentenced under the ACCA. The district court concluded, inter alia, that because § 924(c)(3)(B) did "not suffer from the same unpredictability as the residual clause of the ACCA," Ovalles could not "make a claim for relief under Johnson." Thus, Ovalles had not shown that her attempted-carjacking conviction in Count Four did not qualify as a crime of violence under § 924(c). Ovalles timely appealed, and the certificate of appealability ("COA") included, inter alia, whether the risk-of-force clause in § 924(c)(3)(B) is unconstitutionally vague under Johnson. We review Johnson and then § 924(c)(3)(A) and (B).[4]

## II.  JOHNSON AND THE ACCA

Johnson involved the ACCA, 18 U.S.C. § 924(e), which defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

    (i)      has as an element the use, attempted use, or threatened use of physical force against the person of another; or

---

[4]The COA issued by the district court properly identifies an underlying constitutional issue involved in this § 2255 appeal. See Spencer v. United States, 773 F.3d 1132, 1137-38 (11th Cir. 2014) (en banc).

10

(ii)　　is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents <u>a serious potential risk of physical injury to another</u>.

18 U.S.C. § 924(e)(2)(B) (emphasis added).  The first prong of this definition is referred to as the "elements clause," while the second prong contains the "enumerated crimes" and, finally, what is commonly called the "residual clause." <u>United States v. Owens</u>, 672 F.3d 966, 968 (11th Cir. 2012).

On June 26, 2015, the Supreme Court in <u>Johnson</u> held that the residual clause of the ACCA is unconstitutionally vague because it creates uncertainty about how to evaluate the risks of physical injury posed by a prior criminal conviction and how much risk it takes to qualify as a violent felony.  <u>Johnson</u>, 576 U.S. at ___,135 S. Ct. at 2557-58, 2563.  The Supreme Court clarified that, in holding that the residual clause is void, it did not call into question the application of the elements clause and the enumerated crimes of the ACCA's definition of a violent felony.  <u>Id.</u> at 2563.  In <u>Welch v. United States</u>, the Supreme Court held that <u>Johnson</u> announced a new substantive rule that applies retroactively to cases on collateral review.  <u>Welch v. United States</u>, ___ U.S. ___, 136 S. Ct. 1257, 1264-65, 1268 (2016).

### III.  SECTION 924(c)

Distinct from the provision in § 924(e), § 924(c) provides for a mandatory consecutive sentence for any defendant who uses or carries a firearm during a

11

crime of violence or a drug-trafficking crime.  18 U.S.C. § 924(c)(1).  For the

purposes of § 924(c), "crime of violence" means an offense that is a felony and:

> (A)    has as an element the use, attempted use, or threatened use of
> <u>physical force</u> against <u>the person or property</u> of another, or
>
> (B)    that by its nature, involves a <u>substantial risk that physical force</u>
> against <u>the person or property</u> of another may be used <u>in the
> course of committing the offense</u>.

<u>Id.</u> § 924(c)(3)(A), (B) (emphasis added).  For purposes of this appeal, we refer to

the former clause as the "use-of-force" clause in § 924(c)(3)(A) and the latter

clause as the "risk-of-force" clause in § 924(c)(3)(B).  At times the "risk-of-force"

clause in § 924(c)(3)(B) has been called a residual clause, too.  But as explained

below, the more appropriate name for § 924(c)(3)(B) is "risk-of-force" clause

because its text is materially different from the residual clause in the ACCA's

§ 924(e)(2)(B).

Three Circuits—the Eighth, Second, and Sixth—have described

§ 924(c)(3)(B) as a "risk-of-force" clause and held that the void-for-vagueness

holding in <u>Johnson</u> does not apply to or invalidate § 924(c)(3)(B).  <u>See</u> <u>United</u>

<u>States v. Prickett</u>, 839 F.3d 697, 699-700 (8th Cir. 2016), <u>petition for cert. filed</u>

(U.S. Dec. 30, 2016) (No. 16-7373); <u>United States v. Hill</u>, 832 F.3d 135, 145-49

(2d Cir. 2016); <u>United States v. Taylor</u>, 814 F.3d 340, 375-79 (6th Cir. 2016),

<u>petition for cert. filed</u> (U.S. Oct. 12, 2016) (No. 16-6392); <u>see also</u> <u>United States v.</u>

<u>Davis</u>, ___ F. App'x ___, 2017 WL 436037, at *2 (5th Cir. Jan. 31, 2017)

12

(unpublished) (concluding <u>Johnson</u> does not apply to or invalidate § 924(c)(3)(B)),

<u>petition for cert. filed</u> (U.S. May 3, 2017) (No. 16-8997).  On the other hand, the

Seventh Circuit has concluded that <u>Johnson</u> does apply to § 924(c)(3)(B).  <u>See</u>

<u>United States v. Cardena</u>, 842 F.3d 959, 995-99 (7th Cir. 2016) (stating that

<u>Johnson</u> applies but that the underlying Illinois kidnapping convictions qualified as

crimes of violence under the "use-of-force" clause in § 924(c)(3)(A)).

In concluding that <u>Johnson</u> does not apply to or invalidate § 924(c)(3)(B),

the Eighth, Second, and Sixth Circuits have found and analyzed significant

material textual differences between the definition of "crime of violence" in

§ 924(c)(3)(B) (a contemporaneous felony that "by its nature, involves a

substantial risk that physical force against the person or property of another may be

used in the course of committing the offense") and the definition of "violent

felony" in the ACCA's § 924(e)(2)(B) (a prior remote felony that "otherwise

involves conduct that presents a serious potential risk of physical injury to

another").  The Sixth Circuit explained why this significant difference in the text

matters, stating:

> There are significant differences making the definition of
> "crime of violence" in § 924(c)(3)(B) narrower than the definition of
> "violent felony" in the ACCA residual clause.  Whereas the ACCA
> residual clause merely requires conduct "that presents a serious
> potential risk of physical injury to another," § 924(c)(3)(B) requires
> the risk "that <u>physical force</u> against the person or property of another
> may be used <u>in the course of</u> committing the offense."  Risk of
> physical force against a victim is much more definite than risk of

physical injury to a victim.  Further, by requiring that the risk of physical force arise "in the course of" committing the offense, the language of § 924(c)(3)(B) effectively requires that the person who may potentially use physical force be the offender.  Moreover, § 924(c)(3)(B) requires that the felony be one which "by its nature" involves the risk that the offender will use physical force.  None of these narrowing aspects is present in the ACCA residual clause.

Taylor, 814 F.3d at 376-77 (citation omitted).  The Sixth Circuit also found that "[a]nother independently compelling difference between the language in § 924(c)(3)(B) and the ACCA residual clause is the textual link in the [ACCA] clause by the word 'otherwise' to four enumerated but diverse crimes" of burglary, arson, extortion or crimes that involve the use of explosives.  Id. at 377.  The Sixth Circuit emphasized why this textual difference is important, stating:

> The Johnson Court explained that by using the word "otherwise," "the [ACCA] residual clause forces courts to interpret 'serious potential risk' in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives."  The Court further explained that gauging the level of risk required was difficult because the four listed crimes "are 'far from clear in respect to the degree of risk each poses.'"  Unlike the ACCA, § 924(c)(3)(B) does not complicate the level-of-risk inquiry by linking the "substantial risk" standard, through the word otherwise, "to a confusing list of examples."  As a result, § 924(c)(3)(B) does not require analogizing the level of risk involved in a defendant's conduct to burglary, arson, extortion, or the use of explosives.

Id. (citations omitted).

Furthermore, as the Sixth Circuit explained, the federal courts in ACCA cases are considering prior crimes (more often stale convictions from state courts) remote from, and wholly unconnected to, the instant federal firearm-possession

14

offense that is before the federal court.  Id. (stating that "unlike the ACCA residual clause, § 924(c)(3)(B) does not allow courts to consider 'physical injury [that] is remote from the criminal act'" (alteration in original)).  In contrast, in § 924(c)(3)(B) cases, federal courts are generally considering contemporaneous predicate federal crimes, often charged in the same federal indictment, where the force must occur "in the course of committing the offense." Id.  That is, of course, the precise situation here, where Ovalles's attempted–carjacking crime in Count Four and her § 924(c) firearm crime in Count Five were companion and contemporaneous crimes charged in the same federal information.

The Second Circuit and the Eighth Circuit have agreed with the Sixth Circuit's analysis in Taylor and held Johnson does not apply to the "risk-of-force" clause in § 924(c)(3)(B) given the material differences in the text of the ACCA and § 924(c)(3)(B).  See Hill, 832 F.3d at 146-48 (emphasizing that the text of the "risk-of-force" clause in § 924(c)(3)(B) differs in material ways from the ACCA's residual clause and explaining various reasons why); Prickett, 839 F.3d at 699-700 (same).  The Eighth Circuit, like the Sixth Circuit in Taylor, also stressed that "the ACCA residual clause is linked to a confusing set of examples that plagued the Supreme Court in coming up with a coherent way to apply the clause, whereas there is no such weakness in § 924(c)(3)(B)." Prickett, 839 F.3d at 699 (quotation marks omitted).

15

Similarly, the Second Circuit determined that the Supreme Court in <u>Johnson</u> was focused on "[t]wo features of the [ACCA] residual clause [that] conspire[d] to make it unconstitutionally vague." <u>Hill</u>, 832 F.3d at 145 (quotation marks omitted) (first alteration in original). Those two features created a "double-layered uncertainty embedded in the clause's operation," which required courts (1) "to estimate the potential risk of <u>physical injury</u> posed by 'a judicially imagined "ordinary case" of [the] crime'" <u>and</u> (2) "to consider how this <u>risk of injury</u> compared to the risk posed by the four enumerated crimes," which were themselves "'far from clear in respect to the degree of risk each pose[d].'" <u>Id.</u> (quoting in part <u>Johnson</u>, 135 S. Ct. at 2557-58) (emphasis added). The Second Circuit reasoned that it was the combined effect of these two uncertainties that rendered the ACCA's residual clause unconstitutionally vague, stating:

> It was these twin ambiguities—"<u>combining</u> indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony"—that offended the Constitution. [<u>Johnson</u>, 135 S. Ct.] at 2558 (emphasis added); <u>see also id.</u> at 2560 (observing that "[e]ach of the uncertainties in the residual clause may be tolerable in isolation, but 'their sum makes a task for us which at best could be only guesswork'" (quoting <u>United States v. Evans</u>, 333 U.S. 483, 495, 68 S. Ct. 634, 92 L. Ed. 823 (1948))).

<u>Id.</u> at 146. The Second Circuit emphasized that the "risk-of-force" clause in § 924(c)(3)B) "contains no mystifying list of offenses and no indeterminate 'otherwise' phraseology—a defining feature of the ACCA's residual clause" that

16

caused "an additional layer of uncertainty" and were largely to blame for the residual clause's confusion in Johnson. Id. The Second Circuit also stressed that § 924(c)(3)(B)'s language is not only materially different, but also much "narrower" and thus "easier to construe" and that courts have not struggled with interpreting § 924(c)(3)(B) as they have with the ACCA's residual clause. Id. at 147-48.

After review, we agree with the decisions by the Second, Sixth, and Eighth Circuits and hold that Johnson's void-for-vagueness ruling does not apply to or invalidate the "risk-of-force" clause in § 924(c)(3)(B). In doing so, we agree with the reasoning of those circuits, but add these observations.

Notably, § 924(c) has a very different function than the ACCA. The ACCA identifies "previous convictions" for the purpose of applying a recidivist sentencing enhancement to a defendant felon who later possesses a firearm in violation of 18 U.S.C. § 922(g). See 18 U.S.C. § 924(e)(1). There is no required nexus between the conduct in the felon's prior violent felony conviction and that felon's instant firearm-possession offense. Id. §§ 922(g), 924(e)(1). On the other hand, § 924(c) creates a new and distinct offense for a person who, "during and in relation to any crime of violence or drug trafficking crime, . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of such crime, possesses a firearm." Id. § 924(c)(1)(A).

17

Section 924(c)(1)(A) narrows the type of federal felony offenses that might serve as underlying predicate offenses to ones where the instant firearm was used or carried or where the firearm was possessed in furtherance of that underlying predicate crime.  Section 924(c) is not concerned with recidivism, but rather with whether the instant firearm was used "during and in relation to" the predicate crime of violence (or drug trafficking offense) or possessed in furtherance of such predicate offenses.  See id. § 924(c)(1)(A)(ii)-(iii).  The required "nexus" between the § 924(c) firearm offense and the predicate crime of violence makes the crime of violence determination more precise and more predictable.

Further, in its conclusion that the ACCA's residual clause "produce[d] more unpredictability and arbitrariness than the Due Process Clause tolerates," the Supreme Court in Johnson emphasized its own "repeated" inability "to craft a principled and objective standard" for analyzing the ACCA's residual clause. Johnson, 576 U.S. at ___, 135 S. Ct. at 2558-59 (noting that Johnson was the Supreme Court's "fifth [case] about the meaning of the residual clause" and opened yet another "front of uncertainty").  That factor is missing here.

That the crime-of-violence definition in § 924(c)(3)(B) has not produced interpretive challenges (at least not before Johnson's arrival) is no accident.  It is the direct product not only of the nexus between the § 924(c) firearm offense and the predicate crime of violence, but also of the distinctive textual features of

18

§ 924(c)(3)(B) that sharpen its focus and make its application more predictable. Three textual features of § 924(c) make the analysis substantially more precise, predictable, and judicially administrable.  First, Congress tailored the statutory standard to the risk that "physical <u>force</u>" against person or property will be "used" in the course of committing the offense, which describes more concrete conduct than the ACCA's reference to any offense conduct that could present a "potential" risk of "physical injury."  <u>See</u> 18 U.S.C. § 924(c)(3)(B) (emphasis added).  The "use" of "physical force" against the person or property of another is a significantly more specific and focused requirement than the ACCA's general risk-of-injury requirement.  Section 924(c) trains solely on whether the defendant herself might engage in a certain type of behavior—using or threatening physical force—<u>in the course of committing the offense</u>, not whether her actions may produce a potential risk of physical injury in a more tangential or attenuated way.

Second, § 924(c)(3)(B) requires the risk to arise in "the course of committing the offense" and therefore excludes risks arising after the offense is completed—the aspect of the residual clause's risk analysis that <u>Johnson</u> characterized as "[c]ritical[]" to its vagueness holding.  576 U.S. at ___, 135 S. Ct. at 2557.  That textual limitation serves in part as a temporal restriction on the scope of the risk analysis.

19

Third, Congress did not include a confusing list of exemplar crimes, and so freed courts from having to conduct the analysis by reconciling the different risks entailed in the listed offenses. Section 924(c)(3)(B) is not plagued by the same contradictory and opaque indications as the ACCA's residual clause on "how much risk" is necessary to satisfy the statute, because the phrase "substantial risk" is not preceded by a "confusing list of examples." Id. at ___, 135 S. Ct. at 2558, 2561. Combined with the textual distinctions discussed by the other circuits, these distinctive features of § 924(c)(3)(B) further make it materially different from the residual clause in § 924(e).

We agree with the above Second, Sixth, and Eighth Circuits' decisions and hold that Johnson does not apply to, or invalidate, the "risk-of-force" clause in § 924(c)(3)(B). Before concluding though, we explain why we do not find the Seventh Circuit's decision in United States v. Cardena persuasive. 842 F.3d 959 (7th Cir. 2017).

First, in Cardena, the Seventh Circuit summarily concluded that Johnson applied to § 924(c)(3)(B) because "[s]ubsection (B) is virtually indistinguishable from the clause in Johnson that was found to be unconstitutionally vague." 842 F.3d at 996. But, as recounted above, there are material textual differences between the residual clause in § 924(e) invalidated in Johnson and the risk-of-force

20

clause in § 924(c)(3)(B), and the Seventh Circuit's decision did not acknowledge or take the textual differences into account.

Second, the Seventh Circuit did not examine § 924(c)(3)(B) anew, but simply cited its United States v. Vivas-Ceja decision, where it concluded that Johnson invalidated the residual clause in 18 U.S.C. § 16(b).  808 F.3d 719 (7th Cir. 2015).  But, the task in § 16(b) cases is not as precise and predictable as in § 924(c)(3)(B) cases.  A § 16(b) determination involves a recidivist statute and whether a defendant, convicted of illegal reentry after removal under 8 U.S.C. § 1326, has a prior, wholly unrelated felony conviction that qualifies as an "aggravated felony."[5]  Section 16(b) requires the federal court to look back at prior criminal history and evaluate, often under divergent state laws, whether a prior conviction was an aggravated felony.  For an illegal-reentry-after-removal crime, a defendant with a prior aggravated felony conviction can be imprisoned for up to twenty years, rather than up to two years with no criminal history.  See 8 U.S.C. § 1326(a)-(b).

In contrast, as outlined above, in § 924(c)(3)(B) cases, the required substantial nexus between the § 924(c) firearm offense and the contemporaneous

---

[5]The definition of "aggravated felony" found in 8 U.S.C. § 1101(a)(43)(F), incorporates by cross-reference the definition of "crime of violence" in 18 U.S.C. § 16.  In turn, we recognize that § 16(b) defines a "crime of violence" to include a felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 16(b).

federal predicate crime of violence makes the crime of violence determination more precise, predictable, and judicially administrable.  Section 924(c)(3)(B) determinations simply do not suffer from the uncertainties found by the Supreme Court in § 924(e) cases in Johnson.  Because Cardena relied on the § 16(b) Viva-Ceja case, Cardena does not convince us about § 924(c)(3)(B) cases.

## IV.  OVALLES'S JOHNSON CLAIM

### A.    Section 924(c)(3)(B)

Because Johnson's void-for-vagueness ruling does not extend to the "risk-of-force" clause in § 924(c)(3)(B), that clause remains valid.  Ovalles has never argued that her attempted-carjacking offense charged in Count Four would not qualify as a crime of violence under the "risk-of-force" clause in § 924(c)(3)(B) if that clause is constitutionally valid.  Instead, Ovalles has argued only (1) that after Johnson the "risk-of-force" clause is invalid and (2) that her attempted-carjacking offense charged in Count Four does not qualify as a crime of violence under the "use-of-force" clause in § 924(c)(3)(A).  Accordingly, Ovalles's attempted carjacking offense qualifies as a crime of violence under § 924(c)(3)(B), and the district court properly denied Ovalles's § 2255 motion raising a Johnson claim as to Count Five.

### B.    Section 924(c)(3)(A)

22

As an independent and alternative ground for affirmance, even if Johnson's

void-for-vagueness ruling applies to § 924(c)(3)(B), Ovalles's § 2255 motion still

fails because her attempted-carjacking offense constitutes a crime of violence

under the "use of force" clause in § 924(c)(3)(A).

The carjacking statute, 18 U.S.C. § 2119, provides in relevant part:

Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall-- (1) be fined under this title or imprisoned not more than 15 years, or both.

18 U.S.C. § 2119(1) (footnote omitted).  To convict a defendant of carjacking

under this statute, the government must prove that the defendant: (1) with the

intent to cause death or serious bodily harm; (2) took, or attempted to take, a motor

vehicle; (3) that had been transported, shipped, or received in interstate or foreign

commerce; (4) from the person or presence of another; (5) by force and violence or

intimidation.  United States v. Diaz, 248 F.3d 1065, 1096 (11th Cir. 2001).  To

prove an "attempt," the government must show the defendant (1) had the intent to

commit the underlying offense, and (2) took a substantial step toward the

commission of the offense.  United States v. Jockisch, 857 F.3d 1122, 1129 (11th

Cir. 2017).  The intent element of the federal carjacking offense is satisfied if the

defendant acted with the intent to kill or cause serious bodily injury to the victim if

23

necessary to take the motor vehicle from the victim.  Holloway v. United States,
526 U.S. 1, 6-8, 119 S. Ct. 966, 970 (1999).

In the context of a successive § 2255 application, this Court already has held
that a carjacking offense under § 2119 "meet[s] the requirements that the force
clause in § 924(c)(3)(A) sets out for a qualifying underlying offense."  In re Smith,
829 F.3d 1276, 1280 (11th Cir. 2016).  As this Court explained briefly, "an
element requiring that one take or attempt to take by force and violence or by
intimidation, which is what the federal carjacking statute does, satisfies the force
clause of § 924(c), which requires the use, attempted use, or threatened use of
physical force."  Id. (footnote omitted); see United States v. Evans, 848 F.3d 242,
247 (4th Cir. 2017) (reasoning that carjacking by "intimidation" under § 2119
necessarily includes a threat of force and is a crime of violence under
§ 924(c)(3)(A)).  Furthermore, attempted or threatened force against either "the
person or property of another" satisfies that elements requirement in
§ 924(c)(3)(A).

Of course, attempted carjacking by "force and violence" (as proscribed in
§ 2119(1)) is readily recognized as a crime of violence under § 924(c)(3)(A).  Yet,
our inquiry under the categorical approach must also be whether attempted taking
of a car by "intimidation" qualifies, too.  The term "intimidation" in the carjacking
statute, however, cannot be read in isolation, but must be considered with the

24

requisite intent under § 2119(1), which is intimidation conduct "with the intent to cause death or serious bodily injury." Proscribed criminal conduct where the defendant must take the car by intimidation and act with intent to kill or cause serious bodily injury is unmistakably a crime of violence also. See United States v. McGuire, 706 F.3d 1333, 1336-38 (11th Cir. 2013) (involving an attempt to disable an aircraft and explaining that an "'active crime' done 'intentionally' against the property of another, with extreme and manifest indifference to the owner of that property and the wellbeing of the passengers" is "unmistakably violent" and "[i]t makes little difference that the physical act, in isolation from the crime, can be done with a minimum of force"); United States v. Kelley, 412 F.3d 1240, 1244 (11th Cir. 2005) (analyzing "intimidation" in the similarly worded bank robbery statute in 18 U.S.C. § 2113(a) and concluding that "intimidation occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts"); see also In re Sams, 830 F.3d 1234, 1238-39 (11th Cir. 2016) (concluding that a § 2113(a) offense is a crime of violence under § 924(c)(3)(A)).[6]

---

[6]Section 2113(a) provides in relevant part:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; . . . .

. . . .

25

We can conceive of no plausible means by which a defendant could commit the crime of attempted carjacking absent an attempted or threatened use of force against either a person or property. Applying the categorical approach, we consider "the plausible applications" of the carjacking statute, not mere "theoretical" possibilities of how the carjacking may occur under § 2219(1). See McGuire, 706 F.3d at 1337 (citing Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S. Ct. 815, 822 (2007) (requiring "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the standard)).

For all these reasons, we hold that attempted carjacking under § 2119(1) categorically qualifies as a crime of violence under § 924(c)(3)(A). Accordingly, the district court did not err in denying Ovalles's § 2255 motion.

**AFFIRMED.**

---

Shall be fined under this title or imprisoned not more than twenty years, or both. 18 U.S.C. § 2113(a).

26