[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10902
Non-Argument Calendar

_____

D.C. Docket No. 2:16-cr-14009-DMM-1

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

TODD ERLING BECKER,

Defendant–Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 19, 2019)

Before MARCUS, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Todd Becker appeals his convictions and sentences on one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); three counts of Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; and three

counts of brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.  On appeal, he argues that: (1) the district court erred in denying his motion to suppress based on a lack of probable cause for his arrest; (2) his post-arrest Miranda[1] waiver was rendered involuntary by statements made by the Federal Bureau of Investigation ("FBI") agent conducting the interrogation; (3) his convictions for Hobbs Act robbery do not qualify as "crime of violence" offenses under 18 U.S.C. § 924(c)(3)(A); (4) his Fifth Amendment right to remain silent was violated by the prosecutor's comment during closing argument; and (5) his 794-month total sentence was grossly disproportionate to the offense conduct for which he was convicted.  After thorough review, we affirm.

Rulings on motions to suppress involve mixed questions of law and fact. United States v. Touset, 890 F.3d 1227, 1231 (11th Cir. 2018).  We review a district court's factual findings for clear error and its application of the law to the facts de novo, and construe all facts in the light most favorable to the prevailing party.  Id. A district court has committed clear error where we are left with a definite and firm conviction that a mistake was made.  United States v. Villarreal, 613 F.3d 1344, 1349 (11th Cir. 2010).  We review de novo whether a confession was voluntary, and construe the facts in a light most favorable to the prevailing party.  United States v. Ransfer, 749 F.3d 914, 921 (11th Cir. 2014); United States v. Lall, 607 F.3d 1277,

---

[1]    Miranda v. Arizona, 384 U.S. 436 (1966).

2

1285 (11th Cir. 2010). We also review de novo whether an offense qualifies as a "crime of violence" under 18 U.S.C. § 924(c). United States v. McGuire, 706 F.3d 1333, 1336 (11th Cir. 2013), overruled on other grounds by Ovalles v. United States, 905 F.3d 1231 (11th Cir. 2018) (en banc). And we review de novo the legality of a sentence under the Eighth Amendment. United States v. McGarity, 669 F.3d 1218, 1255 (11th Cir. 2012). Where a prosecutor has commented on a defendant's choice to remain silent, we review a district court's denial of a mistrial for abuse of discretion. United States v. Wilchcombe, 838 F.3d 1179, 1190 (11th Cir. 2016).

Where an issue was not raised below, we will review it only for plain error. United States v. Turner, 474 F.3d 1265, 1275 (11th Cir. 2007). To establish plain error, the defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights. Id. at 1276. If the defendant satisfies these conditions, we may exercise our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id.

First, we are unpersuaded by Becker's claim that the district court erred in concluding that probable cause existed to arrest him and in denying his motion to suppress. "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Dist. of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018)

3

(quotations omitted). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar." Id. (quotations and citations omitted). Courts may examine the collective knowledge of law officers where the officers maintained a minimal level of communication during their investigation. United States v. Willis, 759 F.2d 1486, 1494 (11th Cir. 1985).

"[W]arrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution." Virginia v. Moore, 553 U.S. 164, 176 (2008). "[W]hile States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." Id. In Moore, police erroneously made an arrest for the misdemeanor of driving on a suspended license, in violation of a Virginia law that authorized only the issuance of a summons for the offense (and not an arrest), and during a search incident to the arrest, police found crack cocaine. Id. at 166–67. The Virginia Supreme Court overturned the conviction on Fourth Amendment grounds, reasoning that the officers were not authorized to arrest Moore under state law and the Fourth Amendment did not permit searches incident to citation. Id. at 168. The Supreme Court disagreed, holding that it is not the province of the Fourth Amendment to enforce state law and the arrest was permissible under the Fourth Amendment because it was supported by probable cause -- regardless of whether the arrest violated state law. Id. at 178.

4

In United States v. Goings, we addressed whether Moore required suppression where a defendant had been arrested in Florida by Georgia officers following a high-speed pursuit. 573 F.3d 1141, 1142 (11th Cir. 2009). The defendant argued that the Georgia officers exceeded their authority when they arrested him in Florida, in violation of state law, and thus, suppression of the drug-related evidence found incident to that arrest was warranted. Id. We rejected that argument, holding that any violation of state law was irrelevant to the Fourth Amendment analysis, so long as the arrest was supported by probable cause. Id. at 1143.

"Whoever has in his or her possession any tool, machine, or implement with intent to use the same, or allow the same to be used, to commit any burglary or trespass shall be guilty of a felony of the third degree." Fla. Stat. § 810.06. To sustain a conviction under § 810.06, the government must prove the defendant intended to (1) commit a burglary or trespass while in the possession of burglary tools and (2) use those tools to commit the crime. Brooks v. State, 23 So. 3d 1227, 1229 (Fla. Dist. Ct. App. 2009). The requisite specific intent exists when the defendant engages in or causes some overt act toward the commission of the burglary. Thomas v. State, 531 So. 2d 708, 710 (Fla. 1988). "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the same standard of conclusiveness and probability as the facts necessary to support a conviction." United States v. Dunn, 345 F.3d 1285, 1290 (11th Cir.

5

2003) (brackets and quotations omitted). Whether probable cause exists depends on the elements of the alleged crime and the facts of the case. Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137–38 (11th Cir. 2007) (discussing probable cause in the context of a 42 U.S.C. § 1983 suit). Officers can infer that a defendant possessed the requisite mens rea giving rise to probable cause where that inference is reasonable under the totality of the circumstances. Wesby, 138 S. Ct. at 586.

Here, the district court did not err in denying Becker's motion to suppress because probable cause existed to arrest Becker for possession of burglary tools.[2] The circumstances of the arrest, when viewed in their totality, show that: (1) Detective Andrew Bolonka, a member of an FBI task force with knowledge of Becker's 2015 burglary arrest, had been conducting surveillance on Becker's home in February 2016 in order to find Vickey Jones, with whom Becker had been when he was arrested in 2015, and to serve a warrant on her; (2) when Becker and Jones

---

[2]     As part of our probable cause analysis, we reject the government's claim that Florida law is irrelevant. In both Moore and Goings, the question was whether suppression was warranted under the Fourth Amendment where an officer exceeded their authority to make an arrest despite having probable cause to do so. Both this Court and the Supreme Court held that an arrest that violated state law was valid for the purposes of the Fourth Amendment so long as the arrest was supported by probable cause. Goings, 573 F.3d at 1143; Moore, 553 U.S. at 178. Here, we're not asking whether an unlawful arrest amounted to a constitutional violation where the arrest was supported by probable cause but was made in violation of state law on some other basis; in contrast, we're looking to Florida law to inform the analysis of whether probable cause existed for the purposes of the Fourth Amendment. The probable cause analysis for a given arrest is necessarily framed by the nature of the law allegedly violated, insofar as the reasonableness of that arrest can be determined only by looking at the alleged criminal conduct and comparing it to the conduct prohibited by law. See Skop, 485 F.3d at 1137–38. In other words, it is only possible to know whether an officer's decision to arrest was objectively reasonable if one knows what the alleged crime entails, an analysis that necessarily implicates state law.

6

left his home in a minivan, Bolonka stopped the vehicle to execute the warrant on Jones; (3) as Bolonka approached the van, he observed the presence of a pry bar, sledgehammer, and powered saw in the van that he knew were similar to those found in the rented van Becker had been driving when arrested in 2015 on burglary charges; and (4) at that point, Bolonka arrested Becker.  In light of this evidence and Bolonka's familiarity with Becker's 2015 burglary arrest -- including the involvement of the same people, mode of transportation, and tools -- a reasonable officer in Bolonka's position could have inferred a substantial chance that Becker intended to or was in the process of committing a burglary using the tools in the van. Willis, 759 F.2d at 1494; Wesby, 138 S. Ct. at 586 ("Probable cause is not a high bar." (quotations omitted)).  It was not necessary for Bolonka to have conclusive proof of Becker's intent, so long as Bolonka had something more than a mere suspicion that Becker intended to commit a burglary, which the circumstances surrounding Becker's 2016 arrest supplied.  Dunn, 345 F.3d at 1290.

Becker adds that Florida courts have sought to limit "pretextual arrests" that lack an overt act evidencing the defendant's specific intent to commit burglary with the tools he possessed, so that an officer familiar with the defendant's criminal history cannot arrest him any time he knows the defendant possesses a burglary tool. But that is not the case before us.  Here, Detective Bolonka based his arrest on more

7

than mere possession, including the use of a rental van, Jones's presence, and Becker's criminal history and modus operandi. Thomas, 531 So. 2d at 710.

As for Becker's argument that the district court clearly erred in finding, as part of its probable cause analysis, that Bolonka saw a mask and bandana in the van before he arrested Becker, we do not address it because the record supports a finding of probable cause without consideration of the mask and bandana. Nor is there any reason to undergo a "fruit of the poisonous tree" analysis, since we've concluded that the arrest did not violate the Fourth Amendment. In short, the district court did not err in holding that Bolonka had probable cause to arrest Becker.

We also are unconvinced by Becker's challenge to his Miranda waiver. Before the government may introduce a defendant's uncounseled statements made during custodial interrogation, it must show that he made a voluntary, knowing, and intelligent waiver of his privilege against self-incrimination and his right to counsel. Lall, 607 F.3d at 1282. This showing requires: (1) the relinquishment of the right to have been voluntary, i.e., "the product of free and deliberate choice rather than intimidation, coercion, or deception"; and (2) the waiver to have been made with "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. at 1283 (quotations omitted). Miranda rights are effectively waived if the "totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension." Ransfer,

8

749 F.3d at 935 (quotations omitted).  In determining whether a defendant was coerced, we consider the defendant's education, level of intelligence, the failure to appraise the defendant of his rights, the length of detention, the length and nature of the questioning, and the use of physical punishment.  Id.

The use of deception to obtain a confession is an important factor when considering the totality of the circumstances.  Lall, 607 F.3d at 1285.  While misrepresentations of fact are not enough to render a suspect's subsequent confession involuntary or to undermine a suspect's Miranda waiver, misrepresentations of law are more likely to render a confession involuntary.  Id. Where a law enforcement officer promised a defendant that nothing he said would be used to prosecute him, we held that the promise rendered the defendant's subsequent confession involuntary because it completely undermined the previously-administered Miranda warning's prophylactic effect.  Id. at 1287.  In United States v. Nash, on the other hand, where a law enforcement officer promised to make it known to the prosecutor that the defendant had cooperated, encouraged the defendant to tell the truth, and noted that defendants who cooperate generally received better sentences, we held that the officer had not illegally induced the defendant's ensuing confession.  910 F.2d 749, 752–53 (11th Cir. 1990).  We explained that the officer had not promised that the defendant would receive a

9

reduced sentence, but had only afforded the defendant the opportunity to make an informed decision regarding the advantages of cooperating with the government. Id.

Here, the district court did not err in concluding that Becker voluntarily and knowingly waived his Miranda rights. Becker argues that statements made by Special Agent T.J. Sypniewski rendered Becker's Miranda waiver involuntary and tainted everything that followed, focusing on Sypniewski's statements that (1) the justice system rewards those who cooperate and punishes those that do not, and (2) any state charges could be superseded by the federal charges. As for Becker's argument that he was coercively promised assistance avoiding state charges, Special Agent Sypniewski said that he could not promise Becker anything immediately following his statement that the federal charges could supersede equivalent state charges and later clarified that Becker's state charges might be dropped if equivalent federal charges are pursued. Sypniewski repeated his inability to promise anything several more times before Becker confessed, and Becker said that he understood that no such promises could be made because it would make any subsequent confession look coerced. Further, Becker was given two separate Miranda warnings, was a self-described law clerk with ten years of legal experience, and advised that the "number one sin" was to talk to law enforcement without an attorney present, all of which indicated that he was aware of his rights and the risks of waiving them. Becker also made several statements that showed that his decision to confess was largely due to

his desire to remain in federal custody and to avoid dealing with state authorities. On this record, we cannot say that Special Agent Sypniewski coerced Becker into waiving his <u>Miranda</u> rights by making impermissible promises. <u>Lall</u>, 607 F.3d at 1285, 1287; <u>Ransfer</u>, 749 F.3d at 935.

As for Becker's claim that Special Agent Sypniewski made two statements that undermined the content of the <u>Miranda</u> warnings, we disagree. Sypniewski informed Becker that cooperation could work in his favor, said he would inform the prosecutor of any cooperation Becker chose to give, and repeatedly told Becker that he could not promise him anything. These statements, absent some other coercive measure, do not constitute illegal inducement. <u>Nash</u>, 910 F.2d at 752–53.

As for Becker's argument that Sypniewski's ameliorative measures were unable to remove the taint of his initial misstatement, we again disagree. Becker suggests that it would be impossible for law enforcement to correct an error made during a custodial interrogation, even where the defendant is well-acquainted with the criminal legal process and the error is repeatedly corrected before any incriminating statements are made. But our case law makes clear that we consider a <u>Miranda</u> waiver under the totality of the circumstances. <u>Ransfer</u>, 749 F.3d at 935. And the circumstances here indicate that Becker knowingly made the calculated choice to confess without any promise of a benefit for doing so. Thus, the district

11

court did not err in concluding that Becker voluntarily and knowingly waived his Miranda rights, and we affirm the district court's denial of the motion to suppress.[3]

In his next issue on appeal, Becker concedes that our binding precedent forecloses the argument that his convictions for Hobbs Act robbery do not qualify as predicate crimes of violence for the purposes of 18 U.S.C. § 924(c)(3)(A). See In re Saint Fleur, 824 F.3d 1337, 1340 (11th Cir. 2016). We are bound by prior panel precedent unless and until that holding is overruled by this Court en banc or by the Supreme Court. United States v. Kaley, 579 F.3d 1246, 1255 (11th Cir. 2009). Moreover, published successive application orders are binding precedent on all subsequent panels of this Court. United States v. St. Hubert, 909 F.3d 335, 346 (11th Cir. 2018). Thus, based on In re Saint Fleur, we reject Becker's argument that convictions for Hobbs Act robbery do not constitute "crimes of violence" under § 924(c)(3)(A), but deem Becker's argument as preserved for further review.

We also find no merit to Becker's claim that the prosecutor made comments in closing argument that violated his Fifth Amendment right to remain silent. It is axiomatic that a defendant in custody has an indisputable right under the Fifth Amendment to remain silent after they have received their Miranda warning.

___

[3]    In resolving Becker's challenge to his Miranda waiver, we decline to apply the plain error standard of review, even though we usually review only for plain error when an issue was not raised below. Turner, 474 F.3d at 1275. It is not obvious from the record whether Becker sufficiently raised his due process argument before the district court to preserve it for appeal, and, in any event, as we've explained, Becker has failed to show that the district court erred under the more lenient de novo standard of review.

Wilchcombe, 838 F.3d at 1190.  At the same time, we allow comments on a defendant's pre-Miranda, post-arrest statements to be used as both direct and impeachment evidence.  Id.

Here, Becker challenges the prosecutor's comment during closing arguments that Becker never mentioned the gun used or other means by which he could scare people.  Becker admits he did not object at trial to this comment, so we review only for plain error.  Turner, 474 F.3d at 1275.  But Becker's brief does not begin to develop any plain error argument, beyond asserting that the comment was improper and that he is simply preserving it for further review.  Among other things, Becker has not explained what the prosecutor was referring to, how the comment amounted to error, whether that error was plain, or how it affected his substantial rights.  Id. at 1276.  Accordingly, we cannot say the district court plainly erred as to this issue.

Finally, we are unpersuaded by Becker's claim that his sentence violated the Eighth Amendment in that it was grossly disproportionate to his offense of conviction.  The defendant bears the burden of proof to make a threshold showing that his sentence is grossly disproportional to the offense committed.  United States v. Johnson, 451 F.3d 1239, 1243 (11th Cir. 2006).  Generally, a sentence within statutorily-prescribed limits is neither excessive nor cruel or unusual under the Eighth Amendment.  Id.  So while a narrow principle of proportionality applies to

13

noncapital sentences, there have been few successful challenges to the proportionality of a sentence.  McGarity, 669 F.3d at 1256.

Where a defendant has been convicted for a crime of violence under § 924(c) that involved the brandishing of a firearm, the statutory minimum sentence for a first conviction is 84 months' imprisonment.  18 U.S.C. § 924(c)(1)(A)(ii).  In the case of a second or subsequent conviction, the minimum sentence is 300 months' imprisonment.  Id. § 924(c)(1)(C)(i).  Any sentence imposed on a defendant under § 924(c) shall run consecutively with any other term of imprisonment imposed.  Id. § 924(c)(1)(D)(ii).

Becker has failed to make the threshold showing that his 794-month statutory-minimum sentence violates the Eighth Amendment.  For starters, although he claims that he did not personally wield a gun, he does not dispute that he was properly prosecuted and sentenced as an aider and abettor pursuant to 18 U.S.C. § 2. Moreover, the district court was bound to sentence Becker pursuant to the statutory minimums listed under 18 U.S.C. § 924(c), and a sentence within statutorily-prescribed limits is neither excessive nor cruel or unusual under the Eighth Amendment.  Johnson, 451 F.3d at 1243.  Becker has not otherwise shown why his sentence is so grossly disproportional that it constitutes a constitutional violation; rather, he acknowledges that we have never held that a non-capital offense imposed

14

on an adult violated the Eighth Amendment.  Thus, he has failed to carry his burden, and we affirm.  Id.

   **AFFIRMED**.