[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10874
_____

D.C. Docket No. 1:15-cr-20621-FAM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL ST. HUBERT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 28, 2018)

Before MARCUS, ANDERSON and HULL, Circuit Judges.

HULL, Circuit Judge:

On February 16, 2016, Michael St. Hubert pled guilty to two counts of

using, carrying, and brandishing a firearm during, in relation to, and in furtherance

of a crime of violence, in violation of 18 U.S.C. § 924(c).  The district court sentenced St. Hubert to 84 months' imprisonment for the first § 924(c) conviction and 300 consecutive months' imprisonment for the second § 924(c) conviction.  St. Hubert appeals his § 924(c) convictions and sentences claiming his predicate Hobbs Act robbery and attempted robbery do not constitute crimes of violence under either the risk-of-force (residual) clause in § 924(c)(3)(B) or the use-of-force clause in § 924(c)(3)(A).

After careful review and with the benefit of oral argument, we affirm both convictions and sentences.

## I.    BACKGROUND FACTS

### A.    Indictment

On August 11, 2015, St. Hubert was indicted on thirteen counts in connection with a series of five robberies and one attempted robbery committed in southern Florida between December 23, 2014 and January 27, 2015.  Counts 1, 3, 5, 7, 9, and 11 contained the six robbery counts.  Five counts charged that St. Hubert committed a Hobbs Act robbery, and one count charged an attempted robbery, all in violation of 18 U.S.C. § 1951(b).

Counts 2, 4, 6, 8, 10, and 12 were § 924(c) firearm counts and charged St. Hubert with knowingly using, carrying, and possessing a firearm during, in relation to, and in furtherance of a crime of violence, in violation of 18 U.S.C.

2

§ 924(c)(1)(A).  Each § 924(c) firearm count specifically identified and charged that the predicate crime of violence was one of five Hobbs Act robberies or the attempted Hobbs Act robbery charged in the six substantive robbery counts.  Each § 924(c) firearm count also charged St. Hubert with brandishing the firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

Count 13 charged St. Hubert with knowingly possessing a firearm and ammunition after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

Ultimately, St. Hubert pled guilty to the two § 924(c) firearm counts contained in Counts 8 and 12.  Therefore, only Counts 8 and 12 (the firearm offenses), which expressly incorporated as predicates the robberies in Counts 7 and 11, are relevant to this appeal.  We set out the allegations in those counts.

More specifically, Count 8 charged that St. Hubert used and carried a firearm during the Hobbs Act robbery in Count 7, stating that St. Hubert:

> did knowingly use and carry a firearm during and in relation to a crime of violence, and did knowingly possess a firearm in furtherance of a crime of violence, an offense for which the defendant may be prosecuted in a court of the United States, specifically, a violation of Title 18, United States Code, Section 1951(a), as alleged in Count 7 of this Indictment, in violation of Title 18, United States Code, Section 924(c)(1)(A).
>
> Pursuant to Title 18, United States Code, Section 924(c)(1)(A)(ii), it is further alleged that the firearm was brandished.

3

In turn, Count 7 charged that St. Hubert committed the Hobbs Act robbery of an

AutoZone store in Hollywood, Florida on January 21, 2015, stating St. Hubert:

> did knowingly obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, by means of robbery, as the terms "commerce" and "robbery" are defined in Title 18, United States Code, Sections 1951(b)(1) and (b)(3), in that the defendant did take property from the person and in the presence of persons employed by AutoZone, located at 1513 North State Road 7, Hollywood, Florida 33021, a business and company operating in interstate and foreign commerce, against the will of those persons, by means of actual <u>and</u> threatened force, violence, <u>and</u> fear of injury to said persons, in violation of Title 18, United States Code, Section 1951(a).

(emphasis added).

Count 12 charged that St. Hubert used and carried a firearm on January 27,

2015 during the attempted Hobbs Act robbery in Count 11, stating that St. Hubert:

> did knowingly use and carry a firearm during and in relation to a crime of violence, and did knowingly possess a firearm in furtherance of a crime of violence, an offense for which the defendant may be prosecuted in a court of the United States, specifically, a violation of Title 18, United States Code, Section 1951(a), as alleged in Count 11 of this Indictment, in violation of Title 18, United States Code, Section 924(c)(1)(A).
>
> Pursuant to Title 18, United States Code, Section 924(c)(1)(A)(ii), it is further alleged that the firearm was brandished.

Count 11, in turn, charged that St. Hubert committed the attempted Hobbs Act

robbery of an AutoZone store in Miami, Florida on January 27, 2015, stating that

St. Hubert:

4

did knowingly attempt to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, by means of robbery, as the terms "commerce" and "robbery" are defined in Title 18, United States Code, Sections 1951(b)(1) and (b)(3), in that the defendant did attempt to take property from the person and in the presence of persons employed by AutoZone, located at 59 N.E. 79th Street, Miami, Florida 33138, a business and company operating in interstate and foreign commerce, against the will of those persons, by means of actual <u>and</u> threatened force, violence, <u>and</u> fear of injury to said persons, in violation of Title 18, United States Code, Section 1951(a).

(emphasis added).

## B.    Motion to Dismiss Indictment

On December 22, 2015, St. Hubert filed a motion to dismiss the § 924(c) firearm counts in his indictment. St. Hubert's motion argued that "[t]he 924(c) Counts fail to state an offense because the Hobbs Act charges upon which they are predicated do not qualify as 'crime[s] of violence': Hobbs Act 'robbery' does not fall within the definition of 18 U.S.C. § 924(c)'s 'force clause,' and § 924(c)'s residual clause is unconstitutionally vague under <u>Johnson v. United States</u>, __ U.S. __, 135 S. Ct. 2551 (2015)." The district court denied St. Hubert's motion.

## C.    Guilty Plea Colloquy Outlined the Offense Conduct

Subsequently, during a February 16, 2016 hearing, pursuant to a written plea agreement, St. Hubert pled guilty to Counts 8 and 12, both § 924(c) firearm crimes, in exchange for dismissal of the other eleven counts. The predicate crimes in Counts 8 and 12, respectively, were the Hobbs Act robbery on January 21 and the

5

attempted Hobbs Act robbery on January 27.  We recount the offense conduct which St. Hubert admitted during his plea colloquy.

On January 21, 2015, St. Hubert robbed with a firearm an AutoZone store located at North State Road 7 in Hollywood, Florida.  At approximately 8:00 p.m., St. Hubert entered the store wearing a gray and yellow striped hoodie.  St. Hubert brandished a firearm and directed three store employees to the rear of the store.  St. Hubert demanded that the employees place money from the store's safe inside one of the store's plastic bags and threatened to shoot them.  Approximately $2,300 was stolen during the robbery.  Two of the three employees subsequently identified St. Hubert in a six-person photographic array.

On January 27, 2015, St. Hubert attempted to rob with a firearm a different AutoZone store located at 59 Northeast 79th Street in Miami, Florida.  At approximately 7:00 p.m., St. Hubert entered the store wearing a gray Old Navy hoodie.  St. Hubert proceeded to hold a firearm against the side of one employee and directed a second employee to open the store safe.

As this was occurring, the second employee noticed a City of Miami Police Department vehicle outside the store and ran out of the door to request help.  St. Hubert then fled in a blue Mercury sedan which was registered in his name and to his home address.  A subsequent car chase led law enforcement officials to St.

6

Hubert, who was arrested at his residence. Both AutoZone employees later identified St. Hubert in a showup.

During subsequent valid and authorized searches of St. Hubert's residence, law enforcement officers located both the gray and yellow striped hoodie worn by St. Hubert during the January 21st robbery, and the gray Old Navy hoodie worn by St. Hubert during the January 27th attempted robbery. DNA recovered from both hoodies matched St. Hubert's DNA. During the execution of a search warrant for St. Hubert's vehicle, law enforcement officials located a firearm and ammunition.[1]

During the plea colloquy, the district court also recited the firearm charge set forth in Count 8 and explained that the predicate crime of violence was St. Hubert's AutoZone robbery charged in Count 7. The district court also recited the firearm charge set forth in Count 12 and explained that the predicate crime of violence was his attempted AutoZone robbery charged in Count 11. St. Hubert confirmed that he understood the charges and that he was pleading guilty to both Counts 8 and 12. St. Hubert also affirmed that he was pleading guilty because he was in fact guilty. The district court found that St. Hubert's guilty plea was freely and voluntarily entered, accepted his guilty plea and found him guilty.

---

[1] Cell site records show that on January 27th, 2015, St. Hubert's phone was in the immediate vicinity of the AutoZone store located at 59 Northeast 79th Street, Miami, Florida shortly before the attempted robbery. The cell site records also show that St. Hubert's phone was in the immediate vicinity of his residence shortly after the attempted robbery.

**D.     Sentencing**

On February 16, 2016, the district court sentenced St. Hubert to 84 months' imprisonment on Count 8 and to 300 consecutive months' imprisonment on Count 12.

St. Hubert timely appealed.

## II.     WAIVER BY GUILTY PLEA

On appeal, St. Hubert asks the Court to vacate his convictions and sentences. He does not dispute that he committed the Hobbs Act robbery and attempted robbery of the AutoZone stores and used a firearm in doing so. St. Hubert also does not challenge the validity of his guilty plea. Rather, St. Hubert contends that Hobbs Act robbery and attempted robbery do not qualify as crimes of violence under 18 U.S.C. § 924(c), and therefore he pled guilty to what he terms a non-offense.

In response, the government argues that St. Hubert waived those claims when he knowingly and voluntarily pled guilty to Counts 8 and 12. St. Hubert counters that his § 924(c) claim is jurisdictional and thus not waivable. At the outset, we point out that St. Hubert's appeal actually raises two distinct claims, one constitutional and the other statutory in nature.

St. Hubert's constitutional claim involves § 924(c)(3)(B). St. Hubert's constitutional claim is that: (1) § 924(c)(3)(B)'s residual clause definition of crime

8

of violence is unconstitutionally vague in light of Johnson v. United States, 576

U.S. ___, 135 S. Ct. 2551 (2015); and (2) thus that unconstitutional part of the

statute cannot be used to convict him.

St. Hubert's statutory claim involves § 924(c)(3)(A). Specifically, St.

Hubert says that Hobbs Act robbery and attempted robbery categorically do not

qualify as crimes of violence under the other statutory definition of crime of

violence in § 924(c)(3)(A)'s use-of-force clause. Consequently, before we can

address the merits of St. Hubert's § 924(c) claims, we must first determine whether

St. Hubert has waived them.[2]

## A.    Constitutional Challenge to § 924(c)(3)(B)

The Supreme Court recently spoke directly to whether a guilty plea waives a

constitutional challenge to a statute of conviction. We start with that case.

In Class v. United States, the defendant pled guilty and was convicted under

40 U.S.C. § 5104(e), which prohibits the carrying of a firearm "on the Grounds or

in any of the Capitol Buildings." Class v. United States, ___ U.S. ___, ___ S. Ct.

___, No. 16-424, 2018 WL 987347, at *2 (Feb. 21, 2018). On appeal, the

defendant argued that this statute violated the Second Amendment and the Due

Process Clause. Id. at *3. The Supreme Court concluded that the defendant's

---

[2]We review de novo whether a defendant's unconditional guilty plea waives his right to bring a particular claim on appeal. See United v. Patti, 337 F.3d 1317, 1320 & n.4 (11th Cir. 2003).

voluntary and unconditional guilty plea by itself did not waive his right to challenge on direct appeal the constitutionality of that statute of conviction. Id. at *4.

Prior to Class, this Court had already reached the same conclusion in United States v. Saac, 632 F.3d 1203, 1208 (11th Cir. 2011) (concluding that the "defendants did not waive their argument" that Congress exceeded its authority under Article I, Section 8, Clause 10 of the Constitution when it enacted the Drug Trafficking Vessel Interdiction Act, 18 U.S.C. § 2285, the statute of conviction, "insofar as this claim goes to the legitimacy of the offense that defendants' indictment charged").

Here, St. Hubert argues that he cannot be convicted under § 924(c)(3)(B) because that provision is unconstitutionally vague. Like the defendants in Class and Saac, St. Hubert's guilty plea in this case does not bar his claim that this statute of conviction is unconstitutional.

## B. Statutory Claim as to § 924(c)(3)(A)

Neither Class nor Saac involved the other type of claim St. Hubert raises on appeal, a statutory claim about whether an offense qualifies under the remaining definition of crime of violence in § 924(c)(3)(A). Thus, these decisions do not directly answer the question of whether St. Hubert's unconditional guilty plea

10

waived that statutory claim.  To answer that question, we must determine the precise nature of St. Hubert's statutory claim.

St. Hubert pled guilty to using, carrying, and brandishing a firearm during two crimes of violence, affirmatively identified in the indictment as Hobbs Act robbery and attempted Hobbs Act robbery.  St. Hubert claims that Hobbs Act robbery and attempted Hobbs Act robbery do not qualify as predicate crimes of violence under § 924(c)(3)(A), and thus he pled guilty to a non-offense that the government did not have the power to prosecute.  St. Hubert argues this claim cannot be waived because it raises "jurisdictional" defects in his indictment.

In response, the government contends that the district court had jurisdiction, i.e., the power to act, pursuant to 18 U.S.C. § 3231 because St. Hubert's indictment alleged violations of 18 U.S.C. § 924(c), a law of the United States, and whether Hobbs Act robbery and attempted robbery are crimes of violence under § 924(c)(3)(A) goes merely to the sufficiency of his indictment and raises only non-jurisdictional defects, which can be waived.

Because the government relies on United States v. Cotton, 535 U.S. 625, 122 S. Ct. 1781 (2002), we discuss it first.  In Cotton, the defendants were charged with a cocaine conspiracy under 21 U.S.C. §§ 841(a)(1) and 846, but the indictment charged only a "detectable amount" of cocaine and cocaine base and not a threshold amount needed for enhanced penalties under § 841(b).  535 U.S. at 627-

11

28, 122 S. Ct. at 1783. The Supreme Court had held in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), that if drug quantity is used to increase a defendant's sentence above the statutory maximum sentence for an § 841 drug offense, then that drug quantity must be charged in the indictment and decided by a jury. 543 U.S. at 235-44, 125 S. Ct. at 751-56 (extending the holding of Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), to federal sentencing proceedings under the Sentencing Guidelines).

In Cotton, the Supreme Court rejected the Fourth Circuit's conclusion, based on Ex parte Bain, 121 U.S. 1, 7 S. Ct. 781 (1887), that the omission of the drug-quantity element from the indictment was a jurisdictional defect that required vacating the defendants' sentences. Cotton, 535 U.S. at 629, 122 S. Ct. at 1784. The Supreme Court explained that "Bain's elastic concept of jurisdiction is not what the term 'jurisdiction' means today, i.e., the courts' statutory or constitutional power to adjudicate the case." Id. at 630, 122 S. Ct. at 1785 (internal quotation marks omitted). The Supreme Court pointed to several of its more contemporary cases, which the Court said stood for the broad proposition that defects in an indictment are not jurisdictional, as follows:

> Post-Bain cases confirm that defects in an indictment do not deprive a
> court of its power to adjudicate a case. In Lamar v. United States, 240
> U.S. 60, 36 S. Ct. 255, 60 L.Ed. 526 (1916), the Court rejected the
> claim that "the court had no jurisdiction because the indictment does
> not charge a crime against the United States." Id. at 64, 36 S. Ct. 255.
> Justice Holmes explained that a district court "has jurisdiction of all

12

crimes cognizable under the authority of the United States . . . [and] [t]he objection that the indictment does not charge a crime against the United States goes only to the merits of the case." Id. at 65, 36 S. Ct. 255.  Similarly, United States v. Williams, 341 U.S. 58, 66, 71 S. Ct. 595, 95 L.Ed. 747 (1951), held that a ruling "that the indictment is defective does not affect the jurisdiction of the trial court to determine the case presented by the indictment."

Id. at 630-31, 122 S. Ct. at 1785.  The Supreme Court in Cotton concluded that "[i]nsofar as it held that a defective indictment deprives a court of jurisdiction, Bain is overruled."  Id. at 631, 122 S. Ct. at 1785.  Relying on Cotton, the government argues that St. Hubert's claims that his indictment was defective are non-jurisdictional and waived.

The problem for the government is that this Court has narrowly limited Cotton's overruling of Bain and jurisdictional holding to only omission of elements from the indictment.  See United States v. Peter, 310 F.3d 709, 713-14 (11th Cir. 2002).  In Peter, the defendant pled guilty to an indictment charging a Racketeer Influenced and Corrupt Organizations Act conspiracy with the sole predicate act being mail fraud, in violation of 18 U.S.C. § 1341, by making misrepresentations on state license applications he mailed to a state agency.  Id. at 711, 715.  Later, the Supreme Court in Cleveland v. United States, 531 U.S. 12, 121 S. Ct. 365 (2000), held that state and municipal licenses did not qualify as "property in the hands of the victim" as required for the offense of mail fraud.  Id. at 711.  Therefore, Peter had pled guilty to the predicate act of alleged mail fraud in the very form held in

13

Cleveland not to constitute an offense under § 1341.  Id. at 715.  The Peter Court concluded that the defendant's claim that his conduct was never a crime under § 1341 was a jurisdictional error and could not be procedurally defaulted.  Id. at 711-15.  In reaching this conclusion, the Court in Peter relied on pre-Cotton precedent and concluded that "the decision in United States v. Meacham, 626 F.2d 503 (5th Cir. 1980), establishes that a district court is without jurisdiction to accept a guilty plea to a 'non-offense.'"  Id. at 713 (footnote omitted).[3]

Based on our pre-Cotton precedent in Meacham, the Peter Court decided that when an indictment "affirmatively alleged a specific course of conduct that is outside the reach" of the statute of conviction—or stated another way, "alleges only a non-offense"—the district court has no jurisdiction to accept the guilty plea. Id. at 715 (holding that the pre-Cotton "rule of Meacham, that a district court lacks jurisdiction when an indictment alleges only a non-offense, controls" even after Cotton).  In following Meacham, the Peter Court rejected the government's claim that the language of Cotton rejected the rule of Meacham.  Id. at 713.  The Peter Court limited Cotton's holding to an omission from the indictment, reasoning that "Cotton involved only an omission from the indictment: the failure to allege a fact

---

[3]This Court adopted as binding precedent decisions of the former Fifth Circuit issued before October 1, 1981.  See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

14

requisite to the imposition of defendants' sentences, namely, their trade in a threshold quantity of cocaine base." Id. at 714.[4]

Our best determination is that in this case we are bound by our circuit precedent in Peter. St. Hubert's claim is not, as in Cotton, that his indictment omitted a necessary fact. Rather, like in Peter, the error asserted by St. Hubert is that "the indictment consisted only of specific conduct"—carrying, using, and brandishing a firearm during a Hobbs Act robbery and an attempted Hobbs Act robbery—that, according to St. Hubert, is "as a matter of law, . . . outside the sweep of the charging statute." Id. at 714. Said another way, because "the Government affirmatively alleged a specific course of conduct that [at least in St. Hubert's view] is outside the reach" of § 924(c)(3)(A), "the Government's proof of th[at] alleged conduct, no matter how overwhelming, would have brought it no closer to showing the crime charged than would have no proof at all." Id. at 715 (emphasis added).

Moreover, we see nothing in the Supreme Court's recent Class decision that undermines Peter, much less undermines it to the point of abrogation. See United States v. Kaley, 579 F.3d 1246, 1255 (11th Cir. 2009) (explaining that for a subsequent Supreme Court opinion to abrogate our prior precedent, it must

---

[4]We note that some Circuits have criticized and rejected Peter's narrow reading of Cotton. See United States v. De Vaughn, 694 F.3d 1141, 1148 (10th Cir. 2012); United States v. Scruggs, 714 F.3d 258, 264 (5th Cir. 2013). Further, the Fifth Circuit, after Cotton, overruled Meacham. See United States v. Cothran, 302 F.3d 279, 283 (5th Cir. 2002).

"directly conflict with" that prior precedent). Indeed, while the Supreme Court in Class did not speak in terms of jurisdiction or jurisdictional indictment defects, it suggested, albeit in dicta, that a claim that the facts alleged in the indictment and admitted by the defendant do not constitute a crime at all cannot be waived by a defendant's guilty plea because that kind of claim challenges the district court's power to act. See Class, ___ U.S. at ___, ___ S. Ct. at ___, No. 16-424, 2018 WL 987347, at *5. Notably, the Supreme Court in Class, in its discussion of historical examples of claims not waived by a guilty plea, included cases in which the defendant argued that the charging document did not allege conduct that constituted a crime. Id. at *5 (citing United States v. Ury, 106 F.2d 28, 28-30 (2d. Cir. 1939); Hocking Valley Ry. Co. v. United States, 210 F. 735, 738-39 (6th Cir. 1914); Carper v. Ohio, 27 Ohio St. 572, 575-76 (1875); Commonwealth v. Hinds, 101 Mass. 209, 210 (1869)). Thus, if anything, the dicta in Class supports Peter's analysis.

St. Hubert's claim is that Counts 8 and 12 of the indictment failed to charge an offense against the laws of the United States because Hobbs Act robbery and attempted robbery are not crimes of violence under § 924(c)(3)(A). Under Peter his challenge to his § 924(c) convictions on this ground is jurisdictional, and therefore we must conclude that St. Hubert did not waive it by pleading guilty.

16

Having concluded that neither of St. Hubert's § 924(c) claims has been relinquished by his guilty plea, we now proceed to the merits of those claims.

### III.    HOBBS ACT ROBBERY IN COUNT 8

**A.    Section 924(c)(3)(A) and (B)**

For purposes of § 924(c), a predicate offense can qualify as a crime of violence under one of two definitions.  Specifically, under § 924(c), a crime of violence is an offense that is a felony and that:

> (A)    has as an element the use, attempted use, or threatened use of physical force against <u>the person or property</u> of another, or
>
> (B)    that by its nature, involves a substantial risk that physical force against <u>the person or property</u> of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A), (B) (emphasis added).  The first definition in § 924(c)(3)(A) is commonly referred to as the use-of-force clause.  The second definition in § 924(c)(3)(B) is commonly referred to as the risk-of-force or residual clause.  St. Hubert contends Hobbs Act robbery does not qualify under either definition in § 924(c)(3).  We address the definitions separately.

**B.    Risk-of-Force Clause in § 924(c)(3)(B)**

As to the second definition, St. Hubert argues that Hobbs Act robbery no longer can qualify under the risk-of-force clause in § 924(c)(3)(B) because that definition is unconstitutional in light of <u>Johnson v. United States</u>, 576 U.S. ___, 135 S. Ct. 2551 (2015), in which the Supreme Court declared unconstitutionally

17

vague similar language in the "residual clause" of the Armed Career Criminal Act

("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii).[5]

This Court has already rejected a Johnson-based void-for-vagueness

challenge to § 924(c)(3)(B) in Ovalles v. United States, 861 F.3d 1257 (11th Cir.

2017).  At the time Ovalles was decided, three other Circuits had already held that

the Supreme Court's Johnson decision did not invalidate the risk-of-force or

residual clause in § 924(c)(3)(B).  See Ovalles, 861 F.3d at 1265-66 (following the

Second, Sixth, and Eighth Circuits).[6]  Since Ovalles, the D.C. Circuit also has held

that Johnson did not invalidate § 924(c)(3)(B) and that § 924(c)(3)(B) is

constitutional.  See United States v. Eshetu, 863 F.3d 946, 952-55 (D.C. Cir.

2017); see also United States v. Jones, 854 F.3d 737, 740 (5th Cir. 2017).

In so holding, the Ovalles Court stressed the differences, both textual and

contextual, between the ACCA's residual clause and § 924(c)(3)(B)'s risk-of-force

clause, including: (1) § 924(c)'s distinct purpose of punishing firearm use "in the

---

[5]The ACCA's residual clause defines a "violent felony" as an offense that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added).

[6]The Ovalles Court followed United States v. Prickett, 839 F.3d 697, 699-700 (8th Cir. 2016); United States v. Hill, 832 F.3d 135, 145-49 (2d Cir. 2016); and United States v. Taylor, 814 F.3d 340, 375-79 (6th Cir. 2016), petition for cert. filed (U.S., Oct. 12, 2016 )(No. 16-6392). In Ovalles, the government and the Federal Public Defender who represented the 28 U.S.C. § 2255 movant fully briefed these circuit decisions, which had analyzed at length the Johnson issue as to the continuing validity of § 924(c)(3)(B)'s risk-of-force clause.  The Ovalles Court set forth at length the reasoning of these other circuits, which the Court adopted, and we do not need to set forth their reasoning again here.

course of committing" a specific, and contemporaneous, companion crime rather than recidivism; (2) § 924(c)(3)(B)'s more concrete and predictable requirement that the "risk" of force must arise within that contemporaneous crime charged in the same federal indictment, rather than the ACCA's evaluation of the risk presented by prior state crimes committed long ago under divergent state laws; and (3) the fact that the § 924(c)(3)(B) determination was freed from comparison to a "confusing list of exemplar crimes" like that found in the ACCA's residual clause. Ovalles, 861 F.3d at 1263-66. Based on these and other material differences between the two statutes, the Court in Ovalles concluded that the risk-of-force or residual clause in § 924(c)(3)(B) remains valid after Johnson. Id. at 1267.

Under our prior panel precedent rule, we are bound to follow Ovalles and conclude that St. Hubert's constitutional challenge to § 924(c)(3)(B) lacks merit. See Archer, 531 F.3d at 1352. St. Hubert does not deny that Hobbs Act robbery qualifies as a crime of violence if that risk-of-force or residual clause in § 924(c)(3)(B) is constitutional. Thus, we affirm St. Hubert's convictions and sentences based on Ovalles.

## C.    Use-of-Force Clause in § 924(c)(3)(A)

Even assuming that Ovalles is not binding and that Johnson invalidated § 924(c)(3)(B)'s risk-of-force clause as unconstitutionally vague, we conclude St. Hubert's challenge to his first § 924(c) conviction (Count 8) fails because this

19

Court has already held that Hobbs Act robbery (the predicate for Count 8) independently qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause.  See In re Saint Fleur, 824 F.3d 1337, 1340-41 (11th Cir. 2016) (addressing Hobbs Act robbery); In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016) (addressing aiding and abetting Hobbs Act robbery).  Accordingly, as an independent and alternative ground for affirmance, we hold that St. Hubert's Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause, and thus we affirm his first § 924(c) conviction in Count 8.

St. Hubert argues that Saint Fleur and Colon are not binding precedent in his direct appeal because they were adjudications of applications for leave to file a second or successive § 2255 motion.  St. Hubert refers to these adjudications as "SOS applications" and as decisions "occurring in a procedurally distinct context."  We reject that claim because this Court has already held that "our prior-panel-precedent rule applies with equal force as to prior panel decisions published in the context of applications to file second or successive petitions.  In other words, published three-judge orders issued under § 2244(b) are binding precedent in our circuit."  In re Lambrix, 776 F.3d 789, 794 (11th Cir. 2015); see also In re Hill, 777 F.3d 1214, 1223-24 (11th Cir. 2015).

St. Hubert next argues that these Lambrix and Hill decisions themselves involved second or successive applications and thus cannot bind this Court in St.

20

Hubert's direct appeal. We disagree because the rulings in <u>Lambrix</u> and <u>Hill</u> were squarely about the legal issue of whether the prior panel precedent rule encompasses earlier published three-judge orders under § 2244(b). Lest there be any doubt, we now hold in this direct appeal that law established in published three-judge orders issued pursuant to 28 U.S.C. § 2244(b) in the context of applications for leave to file second or successive § 2255 motions are binding precedent on <u>all</u> subsequent panels of this Court, including those reviewing direct appeals and collateral attacks, "unless and until [they are] overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting <u>en</u> <u>banc</u>." See <u>Archer</u>, 531 F.3d at 1352.[7]

Accordingly, in this direct appeal, this panel is bound by <u>Saint Fleur</u> and <u>Colon</u> and concludes that St. Hubert's Hobbs Act robbery is a crime of violence under § 924(c)(3)(A)'s use-of-force clause.[8]

---

[7]St. Hubert points to language in some of our successive application decisions stating that this Court's determination under 28 U.S.C. §§ 2244(b)(3)(C) and 2255(h) that an applicant has made a prima facie showing that his application contains a claim meeting the statutory criteria does not bind the district court. <u>See, e.g.</u>, <u>In re Jackson</u>, 826 F.3d 1343, 1351 (11th Cir. 2016). These decisions do not in any way contradict <u>Lambrix</u> and <u>Hill</u>, but rather stand for the unexceptional proposition that given the "limited determination" involved in finding that an applicant <u>has made a prima facie showing</u>, the district courts must consider the merits of the now-authorized successive § 2255 motion <u>de novo</u>. <u>See</u> <u>In re Moss</u>, 703 F.3d 1301, 1302 (11th Cir. 2013) (explaining that whether an application "made a prima facie showing" is a "limited determination on our part, and, as we have explained before, the district court is to decide the § 2255(h) issues fresh, or in the legal vernacular, <u>de novo</u>" (alterations and internal quotation marks omitted)).

[8]The government also relies on St. Hubert's sentence appeal waiver. St. Hubert responds that the sentence appeal waiver does not preclude his challenge to his § 924(c) convictions and

## IV. ATTEMPTED ROBBERY IN COUNT 12

We now turn to St. Hubert's second § 924(c) conviction (Count 12), where the predicate offense is attempted Hobbs Act robbery. Our circuit precedent has not squarely ruled on that precise offense. Nonetheless, Saint Fleur and Colon are our starting point for that crime too.

St. Hubert's brief argues that Saint Fleur and Colon are inconsistent with the Supreme Court's decisions in Descamps v. United States, Mathis v. United States, Moncrieffe v. Holder and Leocal v. Ashcroft, which applied the categorical approach.[9] St. Hubert contends that when the categorical approach is properly applied, Hobbs Act robbery and attempted robbery fail to qualify as crimes of violence because these offenses can be committed by putting a victim in "fear of injury, immediate or future" and do not require a threat of physical force.

We agree that the Supreme Court's discussion of the categorical approach in these decisions is relevant to St. Hubert's appeal, which is why, in analyzing his attempted Hobbs Act robbery, as well as his Hobbs Act robbery, we take time to apply the categorical approach to the applicable statutes in more detail than Saint

---

sentences because his claim is jurisdictional and because he is "actually innocent of violating 18 U.S.C. § 924(c)." If his convictions are valid, St. Hubert does not dispute his consecutive sentences were required by § 924(c). Given that St. Hubert's claims on appeal as to his convictions fail on the merits, we need not address his sentence appeal waiver.

[9]Mathis v. United States, 579 U.S. ___, 136 S. Ct. 2243 (2016); Descamps v. United States, 570 U.S. 254, 133 S. Ct. 2276 (2013); Moncrieffe v. Holder, 569 U.S. 184, 133 S. Ct. 1678 (2013); Leocal v. Ashcroft, 543 U.S. 1, 125 S. Ct. 377 (2004).

Fleur and Colon did.[10]  First, we compare the statutory texts of § 1951 and

§ 924(c)(3)(A), and then set forth the tenets of the categorical approach.

## A.    Statutory Text and Categorical Approach

The Hobbs Act provides that:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a) (emphasis added).  The text of the Hobbs Act proscribes both

robbery and extortion.  See 18 U.S.C. § 1951(a), (b)(1)-(2).

---

[10]Mathis and Descamps addressed burglary under the enumerated crimes clause of the ACCA's violent felony definition, not the definition of crime of violence under § 924(c)(3)(A)'s use-of-force clause.  See Mathis, 579 U.S. at ___, 136 S. Ct. at 2248; Descamps, 570 U.S. at 258, 133 S. Ct. at 2282.  Similarly, Moncrieffe and Leocal, which involved immigration removal proceedings, addressed different predicate offenses and statutory provisions from this case.  See Moncrieffe, 569 U.S. at 189, 133 S. Ct. at 1683; Leocal, 543 U.S. at 3-4, 125 S. Ct. at 379. Moncrieffe addressed whether a prior state drug conviction qualified as a "drug trafficking crime" under § 924(c)(2) and, therefore, as an "aggravated felony" under the Immigration and Nationality Act ("INA").  Moncrieffe, 569 U.S at 187-90, 133 S. Ct. at 1682-84.  And Leocal addressed whether a prior conviction for driving under the influence qualified as a "crime of violence" under 18 U.S.C. § 16 and, therefore, as an "aggravated felony" under the INA.  Leocal, 543 U.S. at 3-6, 125 S. Ct. at 379-80;

While these decisions are relevant to our analytical approach, they did not involve Hobbs Act robbery or attempted robbery, or the use-of-force clause in § 924(c)(3)(A), and thus are not clearly on point here.  See United States v. Lopez, 562 F.3d 1309, 1312 (11th Cir. 2009); Atlantic Sounding Co. v. Townsend, 496 F.3d 1282, 1284 (11th Cir. 2007) (explaining that "a later panel may depart from an earlier panel's decision only when the intervening Supreme Court decision is 'clearly on point'" and that when only the reasoning, and not the holding, of the intervening Supreme Court decision "is at odds with that of our prior decision" there is "no basis for a panel to depart from our prior decision").  For this reason, we disagree with St. Hubert's suggestion that we may disregard Saint Fleur and Colon in light of these Supreme Court decisions.

We agree with the Sixth Circuit's conclusion that (1) the Hobbs Act is a divisible statute that sets out multiple crimes, and (2) robbery and extortion are distinct offenses, not merely alternative means of violating § 1951(a).  See United States v. Gooch, 850 F.3d 285, 290-92 (6th Cir.) (discussing Mathis, 579 U.S. __, 136 S. Ct. 2243), cert. denied, 137 S. Ct. 2230 (2017).  Under the categorical approach, we thus consider only the portion of the Hobbs Act defining "robbery" for the elements of St. Hubert's predicate offenses.[11]  See Mathis, 579 U.S. at __, 136 S. Ct. at 2248.

> "Robbery" under the Hobbs Act is defined as:
>
> [T]he unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1).  A conviction for Hobbs Act robbery by definition requires "actual or threatened force, or violence, or fear of injury, immediate or future, to . . . person or property."  Id. § 1951(b)(1) (emphasis added).  Similarly, § 924(c)(3)(A) refers to the "use, attempted use, or threatened use of physical force against person or property."  18 U.S.C. § 924(c)(3)(A) (emphasis added).

---

[11]Notably too, St. Hubert acknowledges that the predicate crimes of violence for his § 924(c) convictions were Hobbs Act robbery and attempted robbery.  He has made no argument about extortion.

24

We also point out, and St. Hubert agrees, that the definition of "robbery" in § 1951(b)(1) is indivisible because it sets out alternative means of committing robbery, rather than establishing multiple different robbery crimes.  See 18 U.S.C. § 1951(b)(1); Mathis, 579 U.S. at __, 136 S. Ct. at 2248-49 (describing the difference between divisible and indivisible statutes).  Accordingly, we apply the categorical approach in analyzing whether St. Hubert's Hobbs Act robbery and attempted robbery offenses qualify as crimes of violence under § 924(c).  See Mathis, 579 U.S. at __, 136 S. Ct. at 2248-49 (explaining that, in the ACCA context, indivisible statutes must be analyzed using the categorical approach); see also United States v. McGuire, 706 F.3d 1333, 1336-37 (11th Cir. 2013) (applying the categorical approach in the § 924(c) context).

In applying the categorical approach, we look only to the elements of the predicate offense statute and do not look at the particular facts of the defendant's offense conduct.  See, e.g., United States v. Keelan, 786 F.3d 865, 870-71 (11th Cir. 2015) ("Under the categorical approach, a court must look to the elements and the nature of the offense of conviction, rather than to the particular facts of the defendant's record of conviction." (quotation marks omitted)).  In doing so, "we must presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized, and then determine whether even those acts" qualify as crimes of violence.  See Moncrieffe, 569 U.S. at 190-91, 133 S. Ct. at 1684 (quotation marks

25

omitted). Thus, under the categorical approach, each of the means of committing Hobbs Act robbery—"actual or threatened force, or violence, or fear of injury"—must qualify under the use-of-force clause in § 924(c)(3)(A).

Reaching the same conclusion as Saint Fleur, four other circuits have applied the categorical approach, listing each of these means, and concluded that Hobbs Act robbery is categorically a crime of violence under the use-of-force clause in § 924(c)(3)(A). See Gooch, 850 F.3d at 291-92; United States v. Rivera, 847 F.3d 847, 848-49 (7th Cir. 2017); United States v. Anglin, 846 F.3d 954, 964-65 (7th Cir.), cert. granted & judgment vacated on other grounds, 138 S. Ct. 126 (2017); United States v. Hill, 832 F.3d 135, 140-44 (2d Cir. 2016); United States v. House, 825 F.3d 381, 387 (8th Cir. 2016).[12]

## B.    St. Hubert's Main Argument: Fear of Injury to Person or Property

Despite this precedent, St. Hubert's main argument is that (1) the least of the acts criminalized in § 1951(b)(1) is "fear of injury," and (2) a Hobbs Act robbery "by means of fear of injury" can be committed without the use, attempted use, or threatened use of any physical force. Although bound by Saint Fleur and Colon in this regard, we take time to outline why St. Hubert's argument fails.

---

[12]The Third Circuit also has concluded that Hobbs Act robbery is a crime of violence under § 924(c)(3)(A)'s use-of-force clause, but the majority opinion did so applying the modified categorical approach. See United States v. Robinson, 844 F.3d 137, 141-44 (3rd Cir. 2016), cert. denied, 138 S. Ct. 215 (2017); id. at 150-51 (Fuentes, J., concurring) ("Hobbs Act robbery is categorically a crime of violence under Section 924(c)(3)). We discuss the Third Circuit's approach at the end of this opinion.

First, this argument is inconsistent not only with Saint Fleur and Colon, but also with our precedent in In re Sams, 830 F.3d 1234, 1238-39 (11th Cir. 2016) and United States v. Moore, 43 F.3d 568, 572-73 (11th Cir. 1994), in which this Court concluded that federal bank robbery "by intimidation," in violation of 18 U.S.C. § 2113(a), and federal carjacking "by intimidation," in violation of 18 U.S.C. § 2119, both have as an element the use, attempted use, or threatened use of physical force and thus qualify as crimes of violence under § 924(c)(3)(A).  See also United States v. Robinson, 844 F.3d 137, 151 n.28 (3d Cir. 2016) (Fuentes, J., concurring) (applying the categorical approach and equating "intimidation" in the federal bank robbery statute with "fear of injury" in Hobbs Act robbery, noting that the legislative history of § 924(c) identified federal bank robbery as the prototypical crime of violence, and reasoning that Congress therefore intended § 924(c)'s physical force element to be satisfied by intimidation or fear of injury), cert. denied, 138 S. Ct. 215 (2017); United States v. Gutierrez, 876 F.3d 1254, 1257 (9th Cir. 2017) (holding "intimidation as used in the federal bank robbery statute requires that a person take property in such a way that would put an ordinary, reasonable person in fear of bodily harm, which necessarily entails the threatened use of physical force" (quotation marks omitted)).

Second, we agree with the Second Circuit's decision in Hill, which explained why that court rejected the argument, like St. Hubert's, that one could

27

commit Hobbs Act robbery by "putting the victim in fear" without any physical force or threat of physical force.  Hill, 832 F.3d at 141-43.  The Second Circuit noted that a hypothetical nonviolent violation of the statute, without evidence of actual application of the statute to such conduct, is insufficient to show a "realistic probability" that Hobbs Act robbery could encompass nonviolent conduct.[13]  Id. at 139-40, 142-43.  The Second Circuit added that "there must be 'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute a crime of violence," and, to that end, "a defendant 'must at least point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues.'"  Id. at 140 (quoting in part Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S. Ct. 815, 822 (2007)); see also United States v. McGuire, 706 F.3d 1333, 1337 (11th Cir. 2013) (citing Duenas-Alvarez and explaining that to determine whether an offense is categorically a crime of violence under § 924(c), courts must consider whether "the plausible applications of the statute of conviction all require the use or threatened use of force . . . ." (emphasis added)).

St. Hubert has not pointed to any case at all, much less one in which the Hobbs Act applied to a robbery or attempted robbery, that did not involve, at a

_____

[13]The hypotheticals that the defendant in Hill suggested would violate the Hobbs Act but would not involve use or threatened use of physical force were: threatening to throw paint on a victim's car or house, threatening to pour chocolate syrup on the victim's passport, and threatening to withhold vital medicine from the victim or to poison him.  Hill, 832 F.3d at 141-42.  Here, St. Hubert's briefing poses similar hypotheticals to the defendant in Hill.

28

minimum, a threat to use physical force.  Indeed, St. Hubert does not offer a plausible scenario, and we can think of none, in which a Hobbs Act robber could take property from the victim against his will and by putting the victim in fear of injury (to his person or property) without at least threatening to use physical force capable of causing such injury.  See Curtis Johnson v. United States, 559 U.S 133, 140, 130 S. Ct. 1265, 1271 (2010) (stating that the phrase "physical force" as used in the ACCA's "violent felony" definition means "violent force—that is, force capable of causing physical pain or injury to another person").[14]

Having applied the categorical approach and explained why Saint Fleur and Colon properly concluded that Hobbs Act robbery is a crime of violence under § 924(c)(3)(A), we now turn to the attempt element of St. Hubert's attempted Hobbs Act robbery.

---

[14]In citing Curtis Johnson, we note that it was an ACCA case where the use-of-force clause in the definition of violent felony required that the physical force be "against the person of another" only.  18 U.S.C. § 924(e)(2)(B)(i); Curtis Johnson, 559 U.S. at 135-36, 130 S. Ct. at 1268.

In contrast, § 924(c)(3)(A)'s use-of-force clause in the definition of crime of violence is broader and includes threatened physical force "against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  As discussed above, the definition of robbery in the Hobbs Act parallels § 924(c)(3)(A), as it likewise refers to actual or threatened force against a person or property. See Robinson, 844 F.3d at 144.  Thus, in the § 924(c) context, Curtis Johnson may be of limited value in assessing the quantum of force necessary to qualify as a "use, attempted use, or threatened use of physical force" against property within the meaning of § 924(c)(3)(A). Nonetheless, even strictly applying Curtis Johnson's definition of physical force, we conclude that Hobbs Act robbery categorically qualifies as a crime of violence.

## C.   Attempt Crimes

While this Court has not yet addressed attempted Hobbs Act robbery, the definition of a crime of violence in the use-of-force clause in § 924(c)(3)(A) explicitly includes offenses that have as an element the "attempted use" or "threatened use" of physical force against the person or property of another. See 18 U.S.C. § 924(c)(3)(A). Moreover, the Hobbs Act itself prohibits attempts to commit Hobbs Act robbery, and such attempts are subject to the same penalties as completed Hobbs Act robberies. See 18 U.S.C. § 1951(a).

To be convicted of an "attempt," a defendant must: (1) have the specific intent to engage in the criminal conduct with which he is charged; and (2) have taken a substantial step toward the commission of the offense that strongly corroborates his criminal intent. United States v. Jockisch, 857 F.3d 1122, 1129 (11th Cir.), cert. denied, 138 S. Ct. 284 (2017); United States v. Yost, 479 F.3d 815, 819 (11th Cir. 2007). "A substantial step can be shown when the defendant's objective acts mark his conduct as criminal and, as a whole, 'strongly corroborate the required culpability.'" Yost, 479 F.3d at 819 (quoting United States v. Murrell, 368 F.3d 1283, 1288 (11th Cir. 2004)).

Like substantive Hobbs Act robbery, attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause because that clause expressly includes "attempted use" of force. Therefore, if, as this Court has

30

held, the taking of property from a person against his will in the forcible manner required by § 1951(b)(1) necessarily includes the use, attempted use, or threatened use of physical force, then by extension the attempted taking of such property from a person in the same manner must also include at least the "attempted use" of force. Cf. United States v. Wade, 458 F.3d 1273, 1278 (11th Cir. 2006) (explaining that an attempt to commit a crime enumerated as a violent felony under § 924(e)(2)(B)(ii) is also a violent felony); see also Hill v. United States, 877 F.3d 717, 718-19 (7th Cir. 2017) ("When a substantive offense would be a violent felony under § 924(e) and similar statutes, an attempt to commit that offense also is a violent felony."); United States v. Armour, 840 F.3d 904, 908-09 (7th Cir. 2016) (holding that attempted armed bank robbery qualifies as a crime of violence under § 924(c)(3)(A)).

In reaching this conclusion, we note the Seventh Circuit's analysis about why it concluded that an attempt to commit a violent felony under the ACCA is also a violent felony. See Hill, 877 F.3d at 719. As to attempt crimes, the Seventh Circuit observed in Hill that: (1) a defendant must intend to commit every element of the completed crime in order to be guilty of attempt, and (2) thus, "an attempt to commit a crime should be treated as an attempt to commit every element of that crime." Id. Also as to attempt crimes, the Seventh Circuit explained that "[w]hen the intent element of the attempt offense includes intent to commit violence against

31

the person of another, . . . it makes sense to say that the attempt crime itself includes violence as an element." Id. Importantly too, the Seventh Circuit then pointed out that the elements clause in the text of § 924(e) equates actual force with attempted force, and this means that the attempted use of physical force against the person of another suffices and that the text of § 924(e) thus tells us that actual force need not be used for a crime to qualify under the ACCA. Id. "Given the statutory specification that an element of attempted force operates the same as an element of completed force, and the rule that conviction of attempt requires proof of intent to commit all elements of the completed crime," the Seventh Circuit concluded that when a substantive offense qualifies as a violent felony under the ACCA, an attempt to commit that offense also is a violent felony. See id.

Analogously here, substantive Hobbs Act robbery itself qualifies as a crime of violence under § 924(c)(3)(A) and, therefore, attempt to commit Hobbs Act robbery requires that St. Hubert intended to commit every element of Hobbs Act robbery, including the taking of property in a forcible manner. Similar to Hill's analysis, the definition of a crime of violence in § 924(c)(3)(A) equates the use of force with attempted force, and thus the text of § 924(c)(3)(A) makes clear that actual force need not be used for a crime to qualify under § 924(c)(3)(A). Thus, under Hill's analysis, given § 924(c)'s "statutory specification that an element of attempted force operates the same as an element of completed force, and the rule

32

that conviction of attempt requires proof of intent to commit all elements of the completed crime," attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A) as well.

Accordingly, as an alternative and independent ground, we conclude that St. Hubert's predicate offense of attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause, which remains unaffected by Johnson, and we thus affirm St. Hubert's second § 924(c) firearm conviction in Count 12.[15]

## V.  MODIFIED CATEGORICAL APPROACH

Although under our precedent we have applied and base our holding on the categorical approach, we pause to mention another approach that makes good sense.  The Third Circuit has aptly explained why a modified categorical approach is more appropriate in § 924(c) firearm cases, where the federal district court evaluates a contemporaneous federal crime charged in the same indictment and has an already developed factual record as to both offenses.  In United States v. Robinson, the Third Circuit, like five other circuits, held that Hobbs Act robbery is a crime of violence under § 924(c)(3)(A).  844 F.3d at 141.

---

[15]As with Count 8 (with a Hobbs Act robbery predicate), we alternatively affirm St. Hubert's conviction on Count 12 (with an attempted Hobbs Act robbery predicate) based on the residual clause in § 924(c)(3)(B).  See Ovalles, 861 F.3d at 1267.

33

In doing so, the Third Circuit first pointed out that the categorical approach emerged as a means of judicial analysis in Taylor v. United States, 495 U.S. 575, 110 S. Ct. 2143 (1990), because the ACCA requires courts to examine prior "violent felonies" that are "often adjudicated by different courts in proceedings that occurred long before the defendant's sentencing." Robinson, 844 F.3d at 142. In Taylor, the two prior convictions at issue were adjudicated in Missouri courts over 17 years before the defendant's ACCA sentencing proceeding. Taylor, 495 U.S. at 578 & n.1, 110 S. Ct. at 2148 & n.1. The Third Circuit stressed that the Supreme Court's Taylor decision recognized that determining the precise facts of an old conviction "could require a sentencing court to engage in evidentiary inquiries based on what occurred at a trial in the distant past." Robinson, 844 F.3d at 142. The Third Circuit explained that the "practical difficulties and potential unfairness" of engaging in a factual inquiry in part led the Supreme Court to adopt its elements-based approach to determining whether a prior state conviction qualifies as a violent felony under the ACCA. Id. at 141-42 (quotation marks omitted).

The Third Circuit then contrasted the material differences between the ACCA and § 924(c) and determined that "[t]he remedial effect of [that] approach is not necessary" in § 924(c) cases for several reasons. Id. at 141-43. For example, in § 924(c) cases, the predicate offense and the § 924(c) offense are companion contemporaneous crimes, charged in the same indictment before the

34

same federal judge; whereas the ACCA involves a prior crime committed long ago in different state jurisdictions with divergent laws. Id. at 141, 143. The Third Circuit explained that, unlike in the ACCA context, in § 924(c) cases, "the record of all necessary facts are before the [federal] district court" as to both offenses. Id. at 141. Consequently, the contemporaneous "§ 924(c) conviction will shed light on the means by which the predicate offense was committed." Id. at 143.

Furthermore, the Third Circuit concluded that "[t]he defendant suffers no prejudice" when a court looks to the defendant's contemporaneous § 924(c) conviction to determine the basis for his predicate offense "because the [federal] court is not finding any new facts which are not of record in the case before it." Id. Rather, it is instead relying only on those facts "that have either been found by the jury or admitted by the defendant in a plea" before the federal court. Id. The Third Circuit therefore concluded that "analyzing a § 924(c) predicate offense in a vacuum is unwarranted when the convictions of contemporaneous offenses, read together, necessarily support the determination that the predicate offense was committed with the 'use, attempted use, or threatened use of physical force against the person or property of another.'" Id. (quoting 18 U.S.C. § 924(c)(3)(A)).

In Robinson, the Third Circuit also recognized (1) that, like the definition of violent felony in the ACCA, the definition of crime of violence in § 924(c) "still directs courts to look at the elements of an offense"; (2) that Hobbs Act robbery is

35

defined as taking property from a person against his will "by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property"; (3) that the minimum conduct criminalized in the statute is "fear of injury"; and (4) that the defendant in <u>Robinson</u> posed hypotheticals where a threat is made to throw paint on a house, pour chocolate syrup on a passport, or to take an intangible economic interest without any use of physical force. <u>Id.</u> at 143-44 (emphasis omitted). While describing Robinson's counsel as "creative," the Third Circuit stressed that the § 924(c) firearm statute requires that the firearm be used or brandished "<u>in the course of committing</u>" the crime of violence. <u>Id.</u> at 140, 144 (emphasis added). The Third Circuit reasoned that "from the two convictions combined, we know that in committing robbery Robinson (1) used or threatened force, violence, or injury to person or property, and (2) used a firearm in order to intimidate a person." <u>Id.</u> at 144. The Third Circuit rejected Robinson's "far-fetched scenarios" in his case because "<u>the combined convictions before [the court] make clear that the 'actual or threatened force, or violence, or fear of injury' in Robinson's Hobbs Act robbery sprang from the barrel of a gun</u>." <u>Id.</u> (emphasis added).

The same is true in St. Hubert's case. Indeed, in his guilty plea before the district court, St. Hubert admitted that he used a firearm in both robberies and even held a firearm against the side of one employee during the attempted robbery on

36

January 27.  Thus, St. Hubert's combined contemporaneous crimes (firearm offense and Hobbs Act robbery or attempted robbery) charged in a single indictment before the same district court made clear that the actual or threatened force or violence or fear of injury in St. Hubert's robbery and attempted robbery sprang from the barrel of a gun.  We agree with the Third Circuit that the firearm's presence should not be ignored in determining whether a defendant is guilty of a § 924(c) offense.

Nonetheless, under our precedent we must apply only the categorical approach and "must close our eyes as judges to what we know as men and women."  United States v. Davis, 875 F.3d 592, 595 (11th Cir. 2017).  The categorical approach serves a purpose when evaluating prior state convictions committed long ago in fifty state jurisdictions with divergent laws.  But, as the Third Circuit has shown, the modified categorical approach is more appropriate in § 924(c) cases when a federal district court is looking at combined contemporaneous federal crimes, and the full record of both crimes is directly before the district court.

## VI.  SESSIONS V. DIMAYA

Finally, we note that, before oral argument in this appeal, St. Hubert moved this Court to stay his appeal pending the outcome of the Supreme Court's decision in Sessions v. Dimaya, No. 15-1498 (U.S., argued Oct. 2, 2017), in which the

37

Supreme Court will address whether the residual clause in 18 U.S.C. § 16(b), as incorporated into the Immigration and Nationality Act ("INA"), is unconstitutionally vague. Before oral argument, we denied St. Hubert's motion for a stay. There are several reasons why Dimaya is inapposite here.

First, Dimaya deals with a different substantive section than St. Hubert's crime. Although § 16(b) contains a similarly worded provision, § 16(b), as incorporated into the INA, operates in a materially different context from § 924(c) because § 16(b), in the immigration context, (like the ACCA) applies to remote prior convictions, rather than to contemporaneous companion offenses charged in the same indictment and requiring a specified nexus to the use, carrying, or possession of a firearm. Federal courts can more manageably and predictably evaluate the predicate contemporaneous crime of violence in the § 924(c) context than in the immigration (or ACCA) context, which involves remote prior convictions under divergent state laws with no nexus to the instant federal proceeding.

Second, the role that the categorical analysis fulfills for § 924(c) is far more limited than for the ACCA and § 16(b) in the immigration context because § 924(c) applies to only federal crimes. See United States v. Gonzales, 520 U.S. 1, 5, 117 S. Ct. 1032, 1035 (1997) ("Congress explicitly limited the scope of the phrase 'any crime of violence or drug trafficking crime' [in § 924(c)] to those 'for

which [a defendant] may be prosecuted in a court of the United States.'" (second alteration in original)).

Third, in the ACCA and § 16(b) immigration context, federal courts must try to "discern some sort of cross-jurisdictional common character for an offense that could be articulated fifty different ways by fifty different States." United States v. Eshetu, 863 F.3d 946, 960 (D.C. Cir. 2017) (Millett, J., concurring in part and concurring in the judgment that conspiracy to commit Hobbs Act robbery is a crime of violence under § 924(c)).  In contrast, in § 924(c) cases, as explained above, federal courts are evaluating a contemporaneous companion federal crime in the same indictment where the relevant record is directly before the district court.  As one judge adroitly explained:

> Section 924(c), in other words, simply does not require courts to overlay a categorical analysis on top of such broad variation in the nature, elements, and contours of the predicate crimes, and courts will confront less variation in how offense conduct is commonly manifested.  The courts will also be dealing with a body of federal law with which they are more experienced.

Id.  In § 924(c) cases "there is already jurisprudential scaffolding that gives structure to the Section 924(c) inquiry."  Id.

For these reasons, we conclude that no matter the outcome about § 16(b)'s residual clause in Dimaya, St. Hubert's § 924(c) convictions and sentences must be affirmed under both clauses in § 924(c)(3)(A) and (B).

**AFFIRMED.**

39